347 A.2d 37.

LAWRENCE ALTMAN *et ux. vs.* SCHOOL COMMITTEE OF THE TOWN OF SCITUATE.

NOVEMBER 10, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. These are certiorari proceedings wherein the Scituate School Committee (the "committee") seeks review of a State Board of Regents' (the "board") decision overruling prior actions of the commissioner of education and of the committee.

It appears that Kara Altman of the Town of Scituate is a severely and profoundly mentally retarded child. Hence, under the pertinent legislation[1] and regulations[2]

[1]General Laws 1956 (1969 Reenactment) §16-24-1 provides:

"In any city or town where there is a child within the age range as designated by the regulations of the state board of education [State Board of Regents], who is either mentally retarded or physically or emotionally handicapped to such an extent that normal educational growth and development is prevented, the school committee of such city or town shall provide such type of special education that will best satisfy the needs of the handicapped child, as recommended and approved by the state board of education [State Board of Regents] in accordance with its regulations."

[2]The board is charged in §16-24-2 with adopting regulations implementing the legislation providing for the education of handicapped children.

she is entitled to have the committee provide her with the type of education that will best satisfy her needs.

During the course of determining an appropriate program for Kara, a difference of opinion developed on what institution could best provide for her educational needs. The special education consultant at the Rhode Island Hospital Child Development Center (the "consultant")[3] and Kara's parents favored the Zambarano State Hospital ("Zambarano") whereas the Coordinator of Special Education Services for the Northwest Special Education Region (the "coordinator"), a region which includes the Town of Scituate, though cognizant of the parents' and the consultant's views, nonetheless preferred the Cranston Regional Center.

On the basis of this background information and after hearing Kara's parents, the committee voted to accept the coordinator's recommendation that she be placed at the Cranston Regional Center. Thereupon, the Altmans

---

The regulations issued pursuant to that directive include the following procedure for determining the eligibility of the severely and profoundly retarded for special education:

"B.1. An overall evaluation by an appropriate multi-disciplinary service team, which includes medical, psychological, physical motor, communication and developmental-educational specialists: such evaluation to be made by the local school system upon request of a referring agency or agencies and completed within ninety (90) days of such request."

*General Regulations of the State Board of Regents Governing the Special Education of Handicapped Children* 4 (1970).

[3] The consultant's partiality for Zambarano was at best guarded. This was made clear by a communication to the coordinator which reads in part:

"* * * I had the feeling that in the Zambarano Program she would receive more stimulation; however, it is only a feeling and cannot be based upon an objective measurement of the various programs available in Rhode Island.

appealed to the Acting Commissioner of Education[4] who authorized the Associate Commissioner of Education to hear the matter. Interested parties were notified of the time and place of the hearing and the Altmans appeared with counsel. Following the hearing the acting commissioner filed a written decision in which he discussed the facts and law in great detail. He concluded that the committee had "* * * acted appropriately and in conformity with the laws and regulations governing the education of handicapped children in deciding to accept the Coordinator's recommendation that Kara Altman be placed in the Cranston Regional Center."

The Altmans appealed that decision to the board.[5] It considered the record of the hearing before the associate commissioner, and in addition requested (1) the Cranston Regional Center and Zambarano to "respond professionally" to the coordinator on their respective "capabilities to handle Kara in an effective program"; and (2) the coordinator to forward those responses to it "together with a specific recommendation." The coordinator complied; and while cognizant of the parental desires, he gave greater weight to the Cranston Regional Center's parent counselling component and again recommended that facility.

---

"As you know, all the programs mentioned are approved by the State Department of Education; and, therefore, they are all of good quality from our experiences with all of them."

[4]General Laws 1956 (1969 Reenactment) §16-39-2 provides:

"Any person aggrieved by any decision or doings of any school committee or in any other matter arising under any law relating to schools or education may appeal to the commissioner of education who, after notice to the parties interested of the time and place of hearing, shall examine and decide the same without cost to the parties involved."

[5]General Laws 1956 (1969 Reenactment) §16-39-3 provides:

"Any decision of the commissioner in such matters shall be subject to an appeal to and review by the board of [Regents for Education]."

Thereupon the board, despite a specific disavowal of any intention to impugn the coordinator's professional judgment, and despite explicit recognition that it would not ordinarily allow parental preference to override that judgment, concluded that on all the facts of the case "* * * Kara's immediate interests would best be served by placing her in the Operation Basics Program at Zambarano Hospital." It is that decision which the committee asks us to review.

At the threshold the Altmans invoke the principle that the prerogative writ of certiorari should not issue except at the behest of one who is aggrieved. Applying that principle, they contend that the committee lacks the requisite aggrievement because it cannot establish that the board's decision has adversely affected it in a substantial manner or imposed upon it some burden or obligation. That test of what constitutes "aggrievement" certainly has been applied by us in situations where an agency has sought review of a decision reversing one of its own rulings, *Hassell* v. *Zoning Bd. of Review*, 108 R. I. 349, 351-53, 275 A.2d 646, 648-49 (1971); *DeCesare* v. *Board of Elections*, 104 R. I. 136, 142, 242 A.2d 421, 424 (1968); *Bowles* v. *Dannin*, 62 R. I. 36, 2 A.2d 892 (1938). But like most other tests of general application, it is subject to exceptions. For example, an agency, though not technically aggrieved, may obtain review if the public has an interest in the issue at stake which reaches out beyond that of the immediate parties. *Buffi* v. *Ferri*, 106 R. I. 349, 351, 259 A.2d 847, 849 (1969).[6]

Further, an agency should be permitted to challenge a judgment that will otherwise escape review. This excep-

---

[6]In that case the Commission for Human Rights represented the public interest and thus acquired standing to seek review of a judgment rejecting a tenant's claim that her ouster by her landlord violated her rights under the Fair Housing Practices Act. *Buffi* v. *Ferri*, 106 R. I. 349, 351, 259 A.2d 847, 849 (1969).

tion should apply when a potential challenger to an administrative action is disqualified by a literal application of the customary test and when its disqualification will inevitably result in the challenged action's, notwithstanding its possible arbitrariness, taking on a conclusive character. *See Elizabeth Fed. Savings & Loan Ass'n v. Howell,* 24 N. J. 488, 501-02, 132 A.2d 779, 787 (1957); *Kingsley v. Division of Tax Appeals,* 76 N. J. Super. 531, 534, 185 A.2d 42, 44 (1962); *Hasbrouck Heights v. Division of Tax Appeals,* 48 N. J. Super. 328, 333, 137 A.2d 585, 588 (1958).

Had the board's decision in this case been adverse to the Altmans, they would be proper parties to seek judicial review. However, because the decision is favorable to the Altmans, only the committee has sufficient incentive to challenge it. If it is denied that opportunity, the board's action, right or wrong, will be completely shielded from judicial review both in this case and in comparable future litigation. To avoid that result, we rely upon the exception, rather than the test itself, and accordingly conclude that in these peculiar circumstances the committee has standing to prosecute this petition for certiorari.

We turn now to the merits of the board's decision ordering Kara to be placed at Zambarano. The Altmans do not seriously purport to defend that decision by asserting that the acting commissioner's action is lacking in evidentiary support or that he acted arbitrarily or capriciously. That would be a vain assertion. Instead, they argue that the language of G. L. 1956 (1969 Reenactment) §16-39-3 providing that decisions of the commissioner "shall be subject to an appeal * * * and review" authorizes the board to engage in a de novo review and to substitute its judgment for that of the commissioner. That construction of what the Legislature intends when it uses the term "review" to define the extent of an agen-

cy's appellate, as distinguished from its regulatory, jurisdiction was rejected in *Masyk* v. *Parshley,* 94 R. I. 282, 180 A.2d 314 (1962), where we held that the power to "review" limited the state personnel appeal board to a determination of whether an employee's dismissal was patently "arbitrary, discriminatory, or unfair." *Id.* at 288, 180 A.2d at 317.

This is not to say that the Legislature always insists that a reviewing agency should limit its overview to ascertaining whether the findings reviewed are supported by competent evidence. But when its purpose has been to broaden the scope of an agency's appellate jurisdiction, the Legislature has not been at a loss for appropriate language to accomplish that purpose. Customarily, it has resorted to fairly explicit terms. Thus, for example, it provided in §41-2-4, §39-12-40, and G. L. 1956, §3-3-7 that the racing and athletics, public utility and liquor control boards, respectively, shall hear "appeals de novo as to both the law and the facts"; in G. L. 1956 (1970 Reenactment) §45-24-18 that a zoning board of review shall hold hearings and give notice thereof to the public and to the parties in interest;[7] and in §16-39-2 that the commissioner of education shall pass on appeals only "* * * after notice to the parties interested of the time and place of hearing * * *."[8]

---

[7] In *Hayes* v. *Smith,* 92 R. I. 173, 181, 167 A.2d 546, 550 (1961), we held in substance that the hearing and notice requirements evidenced a legislative intention to vest a zoning board of review with power to consider de novo the question at issue.

[8] In *Pawtucket School Comm.* v. *State Bd. of Educ.,* 103 R. I. 359, 364, 237 A.2d 713, 716 (1968), we held that the language quoted above gave "the commissioner of education the right to make a de novo decision in examining and deciding the issue involved."

Parenthetically we note that prior to 1951 a party seeking review of a commissioner's decision was required to "lay a statement of the facts of the case" before a justice of this court. Under that grant of jurisdiction

Our review of the appellate procedures in other administrative areas is intended as illustrative, rather than exhaustive, of the manner in which the Legislature evidences a purpose to invest an agency with the power to pass on the existence of the facts upon which the rights of the parties depend. That the Legislature in this instance elected not to use that kind of language and opted instead to provide only that the board on appeal shall "review" decisions of the commissioner convinces us that it intended to limit the board's jurisdiction to a determination of whether the decision under review is patently "arbitrary, discriminatory, or unfair." *See Masyk v. Parshley, supra.* Hence, the board's action overruling the commissioner's decision cannot be permitted to stand.

The petition for certiorari is granted, the decision of the Board of Regents for Education is quashed, and the record in the case is ordered returned to that board with our decision endorsed thereon.

*Natale L. Urso,* for respondents Lawrence Altman et ux.

*Gorham & Gorham, Incorporated, John Gorham, Stacy E. Wolfe,* for petitioner School Committee.

*Julius C. Michaelson,* Attorney General, *Keven A. McKenna,* Asst. Attorney General, for Board of Regents for Education.

---

it was held that the commissioner's findings of fact were conclusive and that the justice of this court could consider only alleged errors of law. *Campbell* v. *School Comm.,* 67 R. I. 276, 281, 21 A.2d 727, 729 (1941); *Hasbrouck* v. *School Comm.,* 46 R. I. 466, 467, 128 A. 449, 449 (1925); *Appeal of Cottrell,* 10 R. I. 615, 618-19 (1874); *Crandall* v. *James,* 6 R. I. 144, 148 (1859).