## PAWTUCKET SCHOOL COMMITTEE,

### v.

### BOARD OF REGENTS FOR ELEMENTARY AND SECONDARY EDUCATION et al.[1]

No. 84–376–M.P.

Supreme Court of Rhode Island.

July 23, 1986.

Joseph V. Cavanagh, Higgins Cavanagh & Cooney, Providence, for petitioner.

Howard R. Haronian, Haronian Paquin & Bramley, Inc., Warwick, Richard A. Skolnik, Lipsey & Skolnik, Providence, for respondent.

---

1. The title of this case before the State Board of Regents for Elementary and Secondary Education was *Michael E. Smith v. Pawtucket School Committee* and that caption should have been retained when the matter was brought to this court. *School Committee of Providence v. Board of Regents for Education,* 429 A.2d 1297, 1297 n. 1 (R.I.1981).

## OPINION

**WEISBERGER, Justice.**

This case comes before us on a petition for common law writ of certiorari filed by the Pawtucket School Committee (the school committee). The school committee claims that the State Board of Regents for Elementary and Secondary Education (the board) erred in deciding that a tenured teacher who was dismissed for cause by the school committee was entitled to a *de novo* hearing before the State Commissioner of Elementary and Secondary Education (the commissioner). The facts are as follows.

Michael E. Smith (Smith), a tenured teacher who had taught in Pawtucket public schools for over sixteen years, pled guilty in the United States District Court for the Northern District of Illinois to the charge of knowingly transporting stolen securities having a value in excess of $5,000 (to wit, approximately $875,000). This crime occurred on or about August 1, 1980. Smith was sentenced to thirty days' work release (later modified to three hundred hours of community service) and five years' probation. The sentences were to run concurrently, and their execution was not to begin until summer recess so that Smith could continue teaching. Following his conviction Smith was notified by the school committee that he was suspended for cause and that the school committee proposed to dismiss him for cause at the close of the school year. These actions were carried out under G.L.1956 (1981 Reenactment) §§ 16–13–4, and 16–13–5, which provide:

"16–13–4. Statement of cause for dismissal—Hearing—Appeals.—Statement of cause for dismissal shall be given the teacher in writing by the governing body of the schools at least one (1) month prior to the close of the school year. The teacher may, within fifteen (15) days of such notification, request in writing, a hearing before the full board. The hearing shall be public or private, in the discretion of the teacher. Both teacher and school board shall be entitled to be represented by counsel and to present witnesses. The board shall keep a complete record of the hearing and shall furnish the teacher with a copy. Any teacher aggrieved by the decision of the school board shall have right of appeal to the state department of education and shall have the right of further appeal to the superior court."[2]

"16–13–5. Suspension for cause—Payment for period suspended.—Section 16–13–4 shall not prevent the suspension of a teacher for good and just cause. But if, after hearing is requested by the teacher, the teacher shall be vindicated, he shall be paid in full for the period of suspension."

A school committee hearing was held at Smith's request. Smith was present and represented by counsel at the two-day hearing. On August 3, 1983, the school committee issued a decision affirming its earlier suspension and dismissal for cause. Smith appealed to the commissioner, and a *de novo* hearing was held. The commissioner concluded that although reasonable minds could differ, Smith's dismissal was not justifiable, because it was too severe in light of the offense committed and the "very special factual context of [the] case." Specifically, the commissioner stated that the record indicated that Smith was an

---

**2.** The state department of education referred to in G.L.1956 (1981 Reenactment) § 16–13–4 was abolished in 1970 pursuant to P.L.1969, ch. 231. A board of regents and a commissioner of education replaced the state department of education. The commissioner of education is empowered to review school committee decisions by G.L.1956 (1981 Reenactment) § 16–60–6(9)(h), as amended by P.L.1981, ch. 291, art. 13, § 2. The board of regents is empowered to hear appeals from the commissioner of education by § 16–60–4(9)(h), as amended by P.L.1981, ch. 291, art. 13, § 2. References in laws not in accord with the reorganization are to be construed to be in accord with the new plan. Section 16–60–12, as amended by P.L.1981, ch. 291, art. 13, § 2. For a discussion of the reorganization see *Jacob v. Burke*, 110 R.I. 661, 664–65, 296 A.2d 456, 458 (1972).

extraordinarily effective teacher whose ability to be a role model was not irreversibly eroded by his conviction.

The school committee appealed the commissioner's decision to the board where the issue was narrowed to whether the commissioner erred in holding a *de novo* hearing. The board decided that the *de novo* hearing was in accordance with § 16–13–4 and remanded the matter to the school committee for action consistent with the commissioner's decision. The school committee thereafter filed a petition for a common law writ of certiorari. The writ was granted so that we could consider the issues raised.

This case presents two issues: (1) whether a petition for writ of common law certiorari is the proper mechanism that a school committee should employ when seeking review of a decision of the board of regents that reversed the school committee's dismissal of a tenured teacher, and (2) whether a § 16–13–4 hearing held by the commissioner of education, reviewing a school committee's decision to dismiss a tenured teacher for cause, is *de novo*. We answer both in the affirmative.

I

Smith contends that the school committee is improperly before this court because it failed to seek review by way of appeal to the Superior Court before petitioning this court for certiorari. He argues that § 16–13–4 provides the exclusive route of review in matters involving tenured teachers dismissed for cause and that § 16–13–4 requires an appeal to the Superior Court before seeking review by this court.

The school committee did not discuss this issue in its brief or at oral argument but in its petition for certiorari argued that its actions were entitled to judicial review under G.L.1956 (1984 Reenactment) § 42–35–15(a), a provision of the Administrative Procedures Act (APA). The school committee's argument is erroneous because under § 42–35–18(a)(29) and G.L.1956 (1981 Reenactment) § 16–60–10, as amended by P.L.

1981, ch. 32, § 3, decisions by the board of regents are exempt from the provisions of the APA. *Latham v. State Department of Education*, 116 R.I. 245, 249, 355 A.2d 400, 402 (1976); *Jacob v. Burke*, 110 R.I. 661, 668, 296 A.2d 456, 460 (1972) (*Jacob I*).

Smith correctly points out that § 16–13–4 governs the route of review to be taken by a tenured teacher dismissed for cause but incorrectly asserts that the school committee is also required to follow the § 16–13–4 review procedures. In *Jacob I*, a nontenured teacher whose contract was not renewed appealed to the commissioner of education and then without taking an appeal to the board of regents, appealed to the Superior Court. The Superior Court dismissed the appeal, and this court held that the teacher's recourse to the Superior Court was premature because she had failed to appeal to the board of regents and therefore had not exhausted her administrative remedies. 110 R.I. at 673, 296 A.2d at 463. The court pointed out that a tenured teacher dismissed for cause, or a nontenured teacher whose contract was not renewed, was required to follow the procedures set forth in § 16–13–4. *Id.* at 669–70, 296 A.2d at 461. The court also stated that persons other than tenured teachers dismissed for cause, or nontenured teachers whose contracts were not renewed, were provided an appropriate route of review by G.L. 1956 (1981 Reenactment) chapter 39 of title 16. *Id.* Finally, the court said that these persons who were seeking review pursuant to chapter 39 of title 16 had no right of appeal from the decisions of the board of regents and could seek judicial review only by way of common law writ of certiorari to this court. *Id.*

■ The review procedure that the school committee followed in the instant case was consistent with our statutory scheme and cases concerning schools and education. Section 16–13–4 does not provide the school committee's route of review of the commissioner's decision, § 16–39–3 does. Section 16–39–3 provides, "Any deci-

sion of the commissioner in such matters shall be subject to an appeal to and review by the board of regents for education." Although the school committee would never be an aggrieved person who would seek review of its own decision pursuant to § 16–39–2, it is clearly entitled to the § 16–39–3 review of "any commission decision." From the board's § 16–39–3 review, the school committee could then seek review directly from this court by way of a petition for common law certiorari. *See School Committee of Providence v. Board of Regents for Education*, 429 A.2d 1297, 1301–02 (R.I.1981); *see also Corrigan v. Donilon*, 433 A.2d 198, 202 (R.I.1981) (stating that if someone is still aggrieved after review by the board of regents, judicial review may be had by way of common law certiorari to this court); *Altman v. School Committee of Scituate*, 115 R.I. 399, 403, 347 A.2d 37, 39 (1975) (stating that a school committee, though not technically aggrieved by a decision reversing one of its own decisions, may obtain judicial review if the public has continuing interest in the issue). We would also point out that a petition for common law certiorari is directed to the discretion of this court, and we have used it to review matters that present important issues of public interest and that require a decision without delay. *Bryant v. Cunniff*, 111 R.I. 211, 212–13, 301 A.2d 84, 85 (1973).

If there was any doubt about whether a school committee was entitled to review under chapter 39 of title 16, specifically, judicial review by common law certiorari as set forth in *Jacob I*, it was dispelled by *Exeter-West Greenwich Regional School District v. Pontarelli*, 460 A.2d 934, 935–36 n. 2 (R.I.1983), where we stated that a school committee that was seeking review of a decision of the commissioner of education was entitled to review as provided in chapter 39 of title 16 and that this appellate route included seeking judicial review by way of common law certiorari.

In view of the foregoing discussion, we conclude that the school committee is prop-

erly before the court on a petition for common law certiorari to review the board's decision.

## II

The second issue is the scope of review on appeals from school committee decisions to the commissioner of education. The school committee argues that the commissioner erred in conducting a *de novo* hearing.

After the school committee dismissed Smith for cause, Smith appealed to the commissioner. The commissioner gave notice to interested parties of the time and place of the hearing. Both parties were represented by counsel and testimony and evidence were presented. The commissioner stated that the hearing was *de novo* and concluded that although the school committee's decision to dismiss Smith was a "very close question, one concerning which reasonable minds can differ, * * * the School Committee's dismissal * * * was not justifiable in view of the very special factual context of [the] case." The commissioner therefore reversed the school committee's decision and remanded the matter to the school committee for consideration of what, if any, sanction, other than dismissal, would be appropriate.

The school committee then appealed to the board where the question was narrowed to whether the commissioner had erred in holding a *de novo* hearing and in substituting his judgment for that of the school committee. The board affirmed the commissioner's decision, stating:

"In *Jacob v. Board of Regents for Education*, 365 A.2d 430 (1976), 117 R.I. 164, our Supreme Court addressed the issue and concluded that a teacher appealing under Section 16–13–4 of the General Laws is entitled to a 'de novo' hearing before the Commissioner, at page 434 of its decision the court states:

'There is some disagreement as to the part the Commissioner of Education plays in the appellate process. The hearing before the commissioner is de

novo. In *Jacob* No. 1, 110 R.I. at 671, 296 A.*2d* at 461, it was emphasized that the administrative review available to a teacher is identical to that afforded to "any other person aggrieved." Within recent times we have stressed that appellants appearing before the commissioner are entitled to a de novo hearing.' "

Initially, we must point out that the commissioner incorrectly termed Smith's appeal from the school committee a § 16–39–2 appeal. As stated earlier in this opinion, § 16–13–4 is the statute that governs the procedure a tenured teacher dismissed for cause must follow. Section 16–39–2 does not supply the route. Although the commissioner was incorrect in his statutory citation, the board correctly stated that Smith's appeal was governed by § 16–13–4 and answered the question before it in terms of whether § 16–13–4 provided for *de novo* review before the commissioner.

The school committee relies in its position that the commissioner erred in holding a *de novo* hearing on *Altman v. School Committee of Scituate*, 115 R.I. 399, 347 A.2d 37 (1975). It argues that *Altman* precludes the commissioner of education from holding a *de novo* hearing because § 16–13–4 does not express a legislative intent to provide *de novo* review. It further asserts that § 16–13–4 is the exclusive source of information concerning the scope of review before the commissioner. Finally, it concludes that because § 16–13–4 lacks an expression of intent to provide a greater scope of review, the commissioner's review is limited to determining whether a school committee's decision was patently arbitrary, discriminatory, or unfair.

The *Altman* case is not determinative of, or even relevant to, the instant case because the issue before the court in that case was the scope of review on appeal to the board of regents from a decision of the commissioner of education. In that case, the parents of a mentally retarded child appealed a school committee's decision about their child to the commissioner of education, who affirmed. The parents then appealed to the board of regents, which substituted its judgment for that of the commissioner of education. The parents argued before this court that the review by the board of regents was *de novo*. The court held that the review of the board of regents is not *de novo* and that § 16–39–3, which provides for "appeal * * * and review" by the board of regents, did not demonstrate any legislative intent to give the board of regents *de novo* review of commissioner of education decisions but instead was consistent with a limited scope of review. *Altman*, 115 R.I. at 402–06, 347 A.2d at 38–40.

We also disagree with the school committee's assertion that § 16–13-4 is the exclusive source from which we should glean legislative intent. Section 16–13–4 is but one piece of a legislative plan that governs matters relating to education. In situations wherein a particular statute is part of a statutory scheme, the legislative intent must be gathered from an examination of the entire statutory plan and not from one part only. *In re Rhode Island Commission for Human Rights*, 472 A.2d 1211, 1212 (R.I.1984). Therefore, when construing § 16–13–4, we must ascertain the policy behind title 16 and apply that policy so as to effectuate the legislative intent. The decision today, and other cases by this court that have addressed this issue, follow this approach.

■ Section 16–13–4 provides for *de novo* review before the commissioner. In *Jacob I*, 110 R.I. at 671, 296 A.2d at 461, the court stated that the review available to a tenured teacher dismissed for cause, or a nontenured teacher whose contract is not renewed, is identical to that provided any other aggrieved person. We have consistently held that § 16–39–2 provides other aggrieved persons *de novo* review by the commissioner of education of school committee decisions. *E.g., Brown v. Elston*, 445 A.2d 279, 285 (R.I.1982); *Slattery v. School Committee of Cranston*, 116 R.I. 252, 263, 354 A.2d 741, 747 (1976). If there

was any uncertainty about the scope of review before the commissioner in a § 16–13–4 matter, it was resolved in *Jacob v. Board of Regents for Education,* 117 R.I. 164, 171, 365 A.2d 430, 434 (1976) (*Jacob II*), where the court said, "The hearing before the commissioner is de novo." Most recently, in *Bochner v. Providence School Committee,* 490 A.2d 37, 42 (R.I.1985), the court stated that § 16–13–4 requires the commissioner "to hear the merits of [the teachers'] claims." These cases are in accord with the statutory scheme of title 16 and the legislative policy behind the plan.

The reason for providing *de novo* review before the commissioner of education to parties who are seeking review of school committee decisions was eloquently expressed long ago in *Appeal of Cottrell,* 10 R.I. 615, 618 (1873):

> School committees, however honest, may be subject to local influences; and the very knowledge that their determination was likely to be reviewed by a disinterested person might, in many cases, prevent an improper decision, and a commissioner would seldom reverse a decision of a committee unless he was satisfied that the public good or justice to individuals required it. And for the purpose of securing uniformity in the administration of the law, this provision is very important."

This rationale is as applicable to cases governed by § 16–13–4 as it is to other educational matters that would be reviewed by the commissioner of education.

In view of the foregoing analysis, we hold that the hearing before the commissioner was properly *de novo.*

For the reasons stated, the petition for certiorari is denied, the writ of certiorari heretofore issued is quashed, and the matter is remanded to the board of regents with our decision endorsed thereon.

BEVILACQUA, C.J., participated in the oral argument and in the decision of the court but retired prior to the publication of this opinion.