DECISION
The Rhode Island Department of Children, Youth, and Families (DCYF) denied the Burrillville School Committee's (Burrillville) request for a hearing on the status of Mental Health Services For Children and Youth (MHSCY) funding for a disabled Burrillville youth. From that determination, the plaintiff appeals under R.I.G.L. 1956 § 42-35-15, and seeks a declaratory judgment pursuant to R.I.G.L. 1956 §§ 9-30-1 and 42-35-7. The two issues have been consolidated for purposes of review.
Facts and Travel
Correspondence between Burrillville and DCYF dating back over eleven years indicates that on August 5, 1985, Paula DiLuglio, a clinical psychologist at the Department For Children and Their Families (a precursor to the DCYF) sent a letter to Robert Monahan, Burrillville's then Director of Special Education. This letter acknowledged the Department's receipt of Burrillville's application for MHSCY funding and requested additional information from the School Department in order to complete the then pending application. (See Exhibit B in the record submitted and certified as complete by Regina M. Gibb, Legal Counsel for DCYF.). The text of this letter reveals that a copy of this correspondence was also sent to the parents of the child at issue.
On August 7, 1986, Donna Gunning, acting on behalf of DCYF, sent another letter to the Burrillville School Department. In this letter, she indicated that Burrillville's MHSCY funding application remained incomplete and requested more information from Mr. Monahan. (See Exhibit C). There is no indication in the record that a copy of this letter was sent to the parents of the child at issue. Laurie Lyman of DCYF wrote to Burrillville a third time on August 8, 1989, at this time corresponding with Roger Chauvette, the new Director of Special Education. This third letter stated that MHSCY funding was approved for the child in question and as a result, the child would be placed on DCYF's MHSCY waiting list. (See Exhibit B(2)[1]). There is no indication in the record before this Court that a copy of either this letter, or any substantively similar notification, was sent to the parents of this child.
The record indicates that approximately six months after plaintiff's MHSCY funding application was approved, Burrillville began making inquiries regarding its status. At least four written status requests were made by the town of Burrillville between February 20, 1990, and April 4, 1595. (See Exhibits C(2), D, E, F). Moreover, the Court's examination of these letters reveals that plaintiff made other unmemorialized attempts to contact DCYF administrators during this period. (See, for example, reference to phone calls made by plaintiff in Exhibit C(2) dated February 20, 1990.). It appears from the record that no response to any of these inquiries was forthcoming.
Finally, on September 26, 1995, approximately ten years after the MHSCY funding application process was initiated, plaintiff requested a hearing on its status. (See Exhibit G). This demand was promptly denied by DCYF. The defendant stated that this demand exceeded the scope of its obligations, pursuant to its authorizing legislation, R.I.G.L. 1956 § 40.1-7-1. Moreover, DCYF refused to recognize Burrillville as a beneficiary of services offered thereunder. (See Exhibit H). From this point forward, the record indicates a number of correspondences between plaintiff and defendant, the substance of which entrenched and reinforced the aforementioned positions of both parties. (See
exhibits I, J, and the unlabeled letter dated March 5, 1996, written by Kevin Aucoin on behalf of DCYF.). The postmarked envelope contained in the supplemental record submitted by counsel indicates that this letter was mailed on March 9, 1996.
The jurisdictional provisions of the APA provide that all appeals to this Court from final agency decisions must be made within 30 days of the mailing of the notice of such decisions. R.I.G.L. 1956 § 42-35-15(b). The day of the event triggering the running of the statutory limitation is never included in the calculation when computing this, or any period of time prescribed by law in a civil action. R.I. Sup. Ct. R. Civ. Pro. 6. A finding that the letter postmarked March 9, 1996 represents a final order by the DCYF dictates that this Court acknowledge a 30 day period, beginning on March 10, 1996, within which a filing of an appeal would be timely. Because this action was filed on April 8, 1996, and the 30 day period mentioned above runs until April 8, 1996, this action is timely.
Standing
At threshold issue is the standing of the plaintiff to request an administrative hearing on the status of MHSCY funding under currently promulgated DCYF regulations. This Court uses the term "standing" in a quasi-judicial sense to refer not to the right to file a cause of action in a court of law, but rather to the right to request an administrative hearing before an agency commission. Plaintiff seeks a Declaratory Judgment from this Court construing this term and the rights associated thereto.
Such a declaration of the validity and applicability of agency rules is properly brought before this Court pursuant to its authority under either the Uniform Declaratory Judgment Act, R.I.G.L. 1956 § 9-30-1 et seq., or § 42-35-7 of the APA. The former affords plaintiffs the opportunity to have rights, status, and other legal relations determined by the Court. R.I.G.L. 1956 § 9-30-2. The later provides plaintiffs with a right to judgment in instances where either the contested rule or its application threatens the legal rights of the plaintiff. R.I.G.L. 1956 § 42-35-7. Moreover, a declaratory judgment may be rendered under the terms of § 42-35-7 whether or not the plaintiff has requested that the agency pass upon the validity or applicability of the rule in question. Id.
The defendant strongly argues for the proposition that the regulations are not written in such a way as to afford the Burrillville School Department the right to an administrative appeal. DCYF's Rules and Regulations governing Mental Health Services For Children and Youths state in part that "Every child and person or agency having legal custody of the child, aggrieved by a decision of the Department under Chapter 40.1-7, shall have the right to an administrative appeal of that decision". DCYF MHSCY Reg 8.1.1. A well settled rule of statutory construction provides that when the words of a statute are clear and unambiguous, they shall be accorded their plain and ordinary meaning. Ellis v. Rhode Island Public Transit Authority,586 A.2d 1055, 1058 (1991). As the language of the regulation is clear, defendant contends that Burrillville is not entitled to a hearing because it is neither a person nor an agency having custody of a child. Because it believes that Burrillville does not meet this threshold criteria, DCYF therefore refuses to honor plaintiff's hearing request. The record reveals that defendant is not refusing to grant all hearing requests on MHSCY funding; in its Memorandum, DCYF states that had the parents of the child at issue herein made a hearing request of the type now sought by plaintiff, it would honor its obligation under Rule 8.1.1. (See
defendant's Memorandum of Law at 13). The defendant simply objects to plaintiff's right to make such a request.
The regulation's plain and ordinary meaning seems to preclude Burrillville from requesting an administrative hearing. Moreover, this Court is mindful that great weight should be attributed to an agency's interpretation of its own regulations. Fratus v.AMERCO, 575 A.2d 989, 991 (R.I. 1990). However, this court possesses exclusive jurisdiction in suits and proceedings of an equitable character. R.I.G.L. 1956 § 8-2-13. Under appropriate circumstances, where justice so requires, the application of equitable estoppel against a government agency may be warranted. Greenwich Bay Yacht Basin Assoc. v. Brown,537 A.2d 988, 991 (R.I. 1988) (citing Loiselle v. City of East Providence116 R.I. 585, 359 A.2d 345 (1976), Schiavelli v. School Committeeof North Providence 114 R.I. 443, 334 A.2d 416 (1975), Ferrelliv. Department of Employment Security, 106 R.I. 588, 261 A.2d 906
(1970)). This relief is of an extraordinary nature and will usually not be applied unless the equities clearly must be balanced in favor of the party seeking relief. Greenwich Bay, 537 A.2d at 991. However, such an application of the doctrine of equitable estoppel is warranted here.
During the course of these proceedings, this Court has been presented with several troubling issues. As was previously stated, DCYF argues that Rule 8.1.1 grants standing only to individuals and agencies having custody of the child in question. However, there is an apparent inconsistency in DCYF's own application of its internal regulations. DCYF's rules governing the procedures and standards of the application process provide that "If the child for whom care and treatment is sought is under 18 years old, the parent, person, or agency having legal custody of the child shall submit the application. . . ." DCYF MHSCY Reg. 5.1.2. An examination of the record reveals that contrary to the explicit terms of this regulation, DCYF permitted Burrillville to initiate and coordinate the MHSCY application at issue. Of all the correspondence contained in this record concerning the MHSCY funding application, only one letter makes any reference whatsoever to the custodial party. An examination of the correspondence between Burrillville and DCYF leads to the conclusion that DCYF ignored the plain meaning of its internal regulations governing the application process and by its very actions, afforded Burrillville the status of an agency in custody of the child.
DCYF has not applied its internal regulations consistently. The DCYF is here implementing a "convenient" interpretation of Rule 8.1.1 that contradicts its prior interpretation of almost identical terms in Rule 5.1.2, so as to deny plaintiff the review it seeks. Because DCYF treated Burrillville as an agency in custody for the purpose of processing the MHSCY application, defendant is now precluded from objecting to Burrillville's hearing request on those very grounds.
In determining whether or not Burrillville should be allowed to request an MHSCY hearing, the Court notes the apparent lack of interest in this matter expressed by the parents of the child at issue, as evidenced by the record. As was noted at the outset, only one letter in the record before this Court evidences any input by or on behalf of the parents of the child at issue. Under certain circumstances, petitioners have been granted the right to bring an administrative appeal of an agency decision when it appeared that denying appellee standing would permit an agency decision to escape judicial review. Akroyd v. R.I. Dept. OfEmployment Sec., 585 A.2d 637, 639 (R.I. 1991), Altman v. SchoolCommittee of the Town of Scituate, 347 A.2d 37, 39 (R.I. 1975). This exception should apply when a potential challenger to an administrative action is disqualified by a literal application of the customary test for standing and when disqualification will inevitably result in the challenged action taking on a conclusive character. Altman, 347 A.2d at 39.
In the aforementioned cases, there was a conclusive presumption that a denial of standing eliminated all avenues of judicial review. In the present case, denying Burrillville the right to an administrative hearing does not foreclose all challenges to the DCYF's decision. As defendant has stated in its Memorandum of Law, a request by the parents for an MHSCY hearing would be met with a favorable reply. (See defendant's Memorandum of Law at 13). Therefore, an alternative means of redress does exist. Under these circumstances, this Court will not rely on the aforementioned exception to grant Burrillville standing to request an MHSCY hearing. However, the Court is mindful that only Burrillville has expressed any significant interest in a resolution of this case.
Finally, in cases where the claims presented involve issues of substantial public interest, courts have, on occasion, refrained from strictly construing standing requirement. See,Providence Retirement Board v. Providence, 660 A.2d 721, 726 (R.I. 1995), Burns v. Sundlum, 617 A.2d 114, 116 (R.I. 1992),East Providence v. Public Util. Comm., 556 A.2d 1305, 1307 (R.I. 1989). In the present matter, funding treatment at the New England Center for Autism costs the town of Burrillville and its citizens approximately $160,000 per year. Taxpayers in the town clearly have a significant interest in the status of this expenditure. In East Providence, the court held that the town had standing to challenge a Public Utility Commission decision because it was the body that could most appropriately represent the interests of citizens injured by the commission's decision.East Providence, 556 A.2d at 1307. Likewise, the Burrillville School Committee is the party most capable of representing the interests of the citizens of Burrillville that, to the extent they must shoulder the burden of these treatment costs, are injured for so long as no funding is available from DCYF. Given these circumstances, this Court finds the argument that Burrillville is entitled to request a status hearing from DCYF under the public interest exception set forth above very persuasive, despite the plain language of Regulation 8.1.1. to the contrary.
The facts of record support the application of the doctrine of equitable estoppel. Under the extant equities of the matter herein, this Court, under its authority pursuant to both R.I.G.L. 1956 § 9-30-1 and § 42-35-7, declares that DCYF's refusal of Burrillville's hearing request was improper and that Burrillville is entitled to request an administrative hearing on the status of MHSCY funding. Defendant, through its actions, and in light of the concerns enumerated above, is estopped from objecting to Burrillville's right to request an administrative hearing under DCYF MHSCY Reg. 8.1.1.
Review Under the APA
In addition to objecting to Burrillville's right to seek an administrative review, DCYF also argues that Burrillville fails to satisfy the criteria for an appeal under the Administrative Procedures Act. Specifically, DCYF argues that Burrillville is not an "aggrieved party", and the issue before this Court is not one which involves a "contested case".
This review is controlled by R.I.G.L. 1956 §42-35-15(g), which provides that in the case of a review of a contested agency decision:
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact.Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission,509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the agency's decision. Newport Shipyard v. Rhode Island Commissionfor Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quoting Caswell v. George ShermanSand Gravel Co., 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept. of Employment Security,414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardov. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflicts ofInterests Commission, 509 A.2d at 458. The Superior Court is required to uphold the agency's findings and conclusions if they are supported by competent evidence. Rhode Island PublicTelecommunications Authority, et al. v. Rhode Island LaborRelations Board, et al., 650 A.2d 479, 485 (R.I. 1994).
Such judicial review is available to any person ". . . who has exhausted all administrative remedies available to him within the agency, and who is aggrieved by a final order in a contested case. . . ." R.I.G.L. 1956 § 42-35-15 (a). In its brief, defendant argues that Burrillville fails to satisfy the criteria set forth above. That proposition is clearly unsupported by the facts in this case. By refusing to recognize Burrillville's standing and denying Burrillville the hearing it seeks, DCYF affords Burrillville no further opportunity for appeal. Burrillville has made efforts to pursue its cause administratively, but has been thwarted at every turn. As a result, this Court finds that Burrillville has exhausted all available administrative remedies.
Defendant also argues that this is not a contested case. A contested case is defined as "a proceeding, including, but not restricted to ratemaking, price fixing, and licensing, in which the legal rights, duties, and privileges of a specific party are required by law to be determined by an agency after an opportunity for a hearing." R.I.G.L. 1956 § 42-35-1(c). In the current instance, DCYF MHSCY regulations provide that upon request, a hearing shall be provided. See, DCYF MHSCY Reg. 8.1.1. In such circumstances, the law is clear. When a hearing is required by law, the matter is contested. See, Property AdvisoryGroup, Inc. v. Rylant, 636 A.2d 317, 318 (R.I. 1994), Pine v.Clark, 636 A.2d 1319, 1325 (R.I. 1994). Therefore, this Court finds that the matter before it is contested.
Finally, this Court addresses the question of whether or not Burrillville is an aggrieved party as that term is defined. An aggrieved party is one that is injured by a final order or judgment. Akroyd v. R.I. Dept. of Employment Sec., 585 A.2d 637, 639 (R.I. 1991) (citing Renza v. Murray, 525 A.2d 53, 55 (R.I. 1987), Newport Electric Corp. v. Public Util. Comm.,454 A.2d 1224, 1225 (R.I. 1983), R.I. Opthamological Society v. Cannon,113 R.I. 16, 26, 317 A.2d 124, 129 (1974). The defendant is correct in stating that aggrievement results when the order or decision, or decree adversely affects some personal or property right or imposes upon the party a burden or obligation. NewEngland Telephone Co. v. Fascio, 254 A.2d 758, 761 (R.I. 1969). However, courts have recognized a general exception to this standard for agencies seeking review of an issue if the public has a stake which reaches beyond that of the immediate parties.Liguori v. Aetna Casualty and Surety Co., 384 A.2d 308, 311 (R.I. 1978). Treatment at the New England Center For Autism costs Burrillville and its taxpayers over $160,000 per year. As long as Burrillville is denied a status hearing, the town is faced with uncertainty surrounding its future funding commitments. Such circumstances represent an aggrievement under the above Liguori
doctrine.
After a review of the entire record, this Court finds that DCYF's refusal of Burrillville's hearing request is both clearly erroneous and an abuse of discretion, in light of the evidence presented. Judgment is granted in favor of plaintiff and this case is remanded back to DCYF for action in accordance with this decision.
With respect to the above decision, counsel shall submit the appropriate order for entry.
[1] Several exhibits were labeled with the same identifier. To avoid confusion, these exhibits will be referred to via subscripts that correspond to their chronological order of creation.