[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is an Administrative Appeal from a final decision of the Department of Business Regulation, Insurance Division, pursuant to § 42-35-15 General Laws of Rhode Island. Joined with that Administrative Appeal, in apparent reliance upon § 8-2-14
R.I.G.L., is a petition for a declaration of rights pursuant to the Uniform Declaratory Judgments Act § 9-30-1, et seq. R.I.G.L.; requests for injunctive relief and, a complaint alleging violation of plaintiff's civil rights in reliance upon 42 U.S.C. § 1983, the Civil Rights Act of 1871 and a request for counsel fees thereunder.
The plaintiff is National Council on Compensation Insurance, a non-profit, unincorporated statistical and rating organization having a principal place of business in the State of Florida and doing business in Rhode Island as a licensed rating organization pursuant to § 27-9-8 R.I.G.L. It will hereinafter be referred to in this decision as plaintiff.
The defendants originally named were Maurice Paradis in his capacity as Director of the Department of Business Regulation, Insurance Division and James E. O'Neil in his capacity as State Attorney General. By virtue of the automatic substitution of party provisions in Rule 25(2)(a) R.C.P. the present parties defendant are Sheldon Whitehouse as Director of the Department of Business Regulation and Jeffrey Pine as State Attorney General.
I.
CASE TRAVEL AND FACTS
On December 28, 1989, plaintiff submitted a rate premium increase request filing on behalf of a number of insurance carriers with the Department of Business Regulation, Insurance Division (see, Plaintiff's Exhibit 42). The effective date of that filing was February 1, 1990. It requested an overall premium level increase of 123.3 percent. Upon receipt of the filing, the Department of Business Regulation requested additional information from the plaintiff pertaining to certain residual market experience. That information was furnished, and on May 3, 1990, the plaintiff's filing was deemed to be complete in accordance with § 27-7.1-4 R.I.G.L.
As required by that statute, the Department of Business Regulation proceeded to schedule, and did conduct a prehearing conference on the plaintiff's filing. That conference was held on May 25, 1990 and the public hearings on the filing were then scheduled for August 22, 23 and 24, 1990. On July 11, 1990, P.L. 1990, ch. 332 became law. That legislative enactment amended certain then existing worker compensation benefits and certain administrative procedures and now required regional and State data as a requirement in any rate filings. That legislation also required the Department of Business Regulation to enact and adopt regulations in order to effectively carry out the legislation's intent and purpose. Accordingly, on July 24, 1990 the plaintiff was notified that the previously scheduled August 1990 public hearings on its rate increase filing were being suspended. Plaintiff at that time took the position that P.L. 1990, ch. 332 did not apply to its pending filing and it requested administrative review and reconsideration of the public hearing suspension order. The defendant Attorney General at that time, apparently assenting to the suspension of hearing order, then also moved to postpone the scheduling of any new hearing dates so as to permit him time within which to undertake a study of insurance industry reserving practices and the impact of P.L. 1990, ch. 332 upon those practices. Over plaintiff's objection, the Attorney General's request was granted. He then engaged an actuarial expert to analyze the projected impact of the 1990 legislation upon the plaintiff's filing information and to analyze the predicted benefit reform provisions contained in the 1990 legislation. Plaintiff also conducted its own actuarial analysis concerning the impact of that legislation. It appears from the certified record that the parties then exchanged, or made available to each other, those actuarial reports and findings.
The Department of Business Regulation after its receipt and review of the Attorney General's actuarial analyses then proceeded to schedule another prehearing conference on January 30, 1991. The Department in preparation for that prehearing conference furnished the plaintiff an outline of what it considered to be issues then existing with regard to the pending filing.
Following the January 30, 1991 prehearing conference date, the Department of Business Regulation then rescheduled and gave due notice of the new public hearings on the plaintiff's rate filing in accordance with § 27-9-10 R.I.G.L. Those public hearings began on February 7, 1991 and continued thereafter on February 8, 14, 15, 26, 27; May 6, 7 and June 10, 1991. The hearings were conducted before hearing officers Michael F. McCann and Alfonso E. Mastrostefano, both having been designated to be hearing officers by the Director of Business Regulation.
After completion of the hearings, the hearing officers on September 30, 1991 filed their lengthy and detailed decision containing the required statutory findings and recommendations. An accurate summary review of the hearing evidence considered by the hearing officers is noted at pages 7 through 26 in their decision. The hearing officers in their decision made both favorable and unfavorable findings and recommendations pertaining to the plaintiff's rate filing. In somewhat final bottom line format, without burdening unduly the length of this decision, the hearing officers rejected plaintiff's 123.3% rate increase request and instead made recommendations that would result in a 54.9% premium increase for the plaintiff's assigned risk market carriers and a 44.5% premium increase for its voluntary under 1% carrier groups. The hearing officers' September 30, 1991 decision was then duly forwarded to the then Director of Business Regulation, Maurice Paradis, for his review, rejection or modification pursuant to § 27-7.1-3 R.I.G.L. and § 27-7.1-7
R.I.G.L.
It might reasonably be inferred from the record certified to this Court that Director Paradis, realized that acceptance by him of the hearing officers' September 30, 1991 recommendations would ultimately result in a 54.9% premium increase for those insureds consigned to the assigned risk market carriers and a 44.5% premium rate increase for those insured by voluntary under 1% carrier groups. On October 3, 1991 he issued a press release in which he outlined and warned of what would result if he approved the hearing officers' recommendations. In his press release he also stated that "in the absence of newly discovered evidence I anticipate that the recommended increases will be granted". As might have been anticipated, public response was both swift and unfavorable. The Governor, responding to the situation, sent a letter on October 9, 1991 to Director Paradis in which he "directed" him not to accept and approve the premium increase recommendations. The Governor followed his letter to Director Paradis with a press release on October 10, 1991 in which the Governor reiterated his no acceptance direction to Director Paradis along with a recommendation that Mr. Paradis conduct an independent investigation concerning the plaintiff's premium rate request and to engage outside expert consultant assistance to analyze the hearing officers' September 30, 1991 decision.
Director Paradis did elect to defer his approval or disapproval of the September 30, 1991 hearing officers' findings and recommendations and to engage outside expert assistance. He enlisted the aid of Professor Francis O'Brien of the Quirk Institute at Providence College to review and analyze the hearing officers' findings and recommendations and determine therefrom the impact of the anticipated premium rate increase upon the State's industry. Professor Quirk's investigation, study, research and analysis of the plaintiff's filing data evidence and the hearing officers' September 30, 1991 decision was not completed until sometime in June of 1992. Prior to the completion of his report, and the formal submission of that report to the Director of Business Regulation, two events of compelling significance to plaintiff's rate filing occurred. First, the General Assembly enacted P.L. 1992, ch. 31, entitled "Workers' Compensation Reform Act" which became effective on May 18, 1992.Second, Mr. Paradis retired from his position of Director of Business Regulation and had been succeeded by Sheldon Whitehouse.
The new Director, Mr. Whitehouse, expeditiously took, as required, consideration of the September 30, 1991 hearing officers' findings, recommendations and decision. Director Whitehouse, by decision filed on July 31, 1992, accepted and adopted the findings of fact as of September 30, 1991 made by the hearing officers. He applied to those September 30, 1991 findings of fact however the provisions of P.L. 1992, ch. 31. He also made certain findings of fact from the rate hearing record of the filing proceedings and concluded that he could not approve the rates applied for by the plaintiff in its December 28, 1989 rate filing for the voluntary under 1% market carriers and for the assigned risk or residual market carriers represented by the plaintiff.
On August 6, 1992 plaintiff filed a motion with the Director of Business Regulation in which it requested that he reconsider his July 31, 1992 decision and Order. Later in its memorandum in support of its motion, plaintiff alleged that former Director Paradis should have made and entered his decision on the rate filing within the 180 day requirement of § 27-7.1-10 R.I.G.L. on November 3, 1990 or at the latest, September 5, 1991. In addition, plaintiff complained of improper intervention on the part of the Governor by his "direction not to approve" letter to former Director Paradis; erroneous findings by Director Whitehouse (without specifics); deliberate delay by Director Whitehouse and Paradis so that the 1992 Workers' Compensation Reform Act would come into effect; the unconstitutionality of the 1992 Workers' Compensation Reform Act and finally, that Director Whitehouse should have recused himself from the decision making process. Plaintiff's motion, after hearing, was denied in a decision entered on September 30, 1992. From that denial this litigation followed.
II.
APPELLATE REVIEW PURSUANT TO § 42-35-15 R.I.G.L.
General Laws 1956, § 42-35-15, as amended, confers appellate jurisdiction in this Superior Court to review decisions of the various state administrative agencies. The scope of review permitted, however, is limited by that statute. Fundamental in the statute is the basic legislative intention that this Court should not, and cannot, substitute its judgment on questions of fact for that of the respondent agency. Lemoine v. Department ofPublic Health, 113 R.I. 285, 291 (1974). This is so, even in those cases where this Court, after reviewing the certified record and evidence might be inclined to view the evidence differently than did the agency. Cahoone v. Board of Review,104 R.I. 503, 506 (1968). Judicial review on appeal is limited to an examination and consideration of the certified record to determine if there is any legally competent evidence therein to support the agency's decision. If there is such evidence, this Court is required to uphold the agency's factual determinations.Barrington School Committee v. Rhode Island State LaborRelations Board, 608 A.2d 1126, 1137-1138 (R.I. 1992);Narragansett Wire Co. v. Norberg, 118 R.I. 596, 607 (1977);Prete v. Parshley, 99 R.I. 172, 176 (1965).
Where, however, the findings or conclusions made by an agency are "totally devoid of competent evidentiary support in the record" or by the reasonable inferences that can be drawn therefrom, then the findings made by the agency are not controlling upon this Court. Milardo v. Coastal ResourcesManagement Council, 434 A.2d 266, 270 (1981); Millerick v.Fascio, 384 A.2d 601, 603 (1978); DeStefanis v. Rhode IslandState Board of Elections, 107 R.I. 625, 627, 628 (1970).
The Administrative Procedure Act, G.L. 1956 § 42-35-15, permits this Court to reverse, modify or remand an agency decision only in those instances where it finds that substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are in violation of constitutional or statutory provisions; or in excess of the statutory authority of the agency, or made upon unlawful procedure, or affected by other error of law, or clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, or is arbitrary or capricious or characterized by abuse of discretion or by a clearly unwarranted exercise of the agency's discretion.
III.
COURT REVIEW OF RECORD CERTIFIED PURSUANT TO § 42-35-15(d)R.I.G.L.
Plaintiff's complaint Count I. pertains to its Administrative Appeal pursuant to § 42-35-15 R.I.G.L. In that Count it contends that the September 30, 1992 final decision by the Director of Business Regulation was arbitrary and capricious; exceeded the Director's statutory authority; was part of a "calculated scheme to constructively deny "plaintiff's rate filing" by intentional inaction; was made upon unlawful procedure and was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. In addition, plaintiff asserts that because Governor Sundlun wrote a letter to the former Director Paradis and directed him not to approve the hearing officers' September 30, 1991 decision that such "direction" constituted illegal and improper intervention by the Governor and somehow influenced the former Director Paradis in either his decision making process or in delaying his final decision. Finally, plaintiff claims that Director Whitehouse should have recused himself from the decision making process because of his previous position as the Governor's Director of Policy during the pendency of the plaintiff's rate filing, and that Mr. Whitehouse "upon information and belief . . . had a hand in drafting the Governor's letter to Director Paradis instructing Director Paradis not to render a decision on NCCI's rate filing." (Plaintiff's Brief, p. 25)
It appears clear from a reading of the certified record, as well as plaintiff's Brief that plaintiff simply misreads and misinterprets the Director's July 31, 1992 decision and his September 30, 1992 final decision.
As for the plaintiff's charge, based "upon information and belief" regarding Director Whitehouse's alleged participation in Governor Sundlun's October 9, 1991 letter to former Director Paradis, plaintiff's Appellate Brief leaves that allegation in mid-air and totally unsupported.
Section 27-7.1-7 R.I.G.L. sets out specifically the standards that must be adhered to and applied by the Director of Business Regulation when called upon to approve or disapprove a rate filing. A reading of the July 31, 1992 decision by Director Whitehouse, when viewed in the light of the certified record shows clearly that he touched all the required bases and complied with all of the standards set out in § 27-7.1-7 R.I.G.L. In his clearly explained and detailed decision, the Director properly noted that he was bound to follow the various rate filing provisions mandated in the 1992 Workers' Compensation Reform Act. Merely because he gratuitously also noted what he believed to be both the legislative intention and purpose of that Act should not be construed as the injection of "outside the record factors" into his decision making process, and detract from the validity of his decision.
The plaintiff also contends that the Director's September 30, 1992 final decision is clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. Plaintiff, in its 38 page Appellate Brief, devotes only pages 27-29 to that most important evidentiary error contention. In that scant review, plaintiff correctly recounts that there were 21 witnesses who testified at the hearings that extended over nine days of hearings and that 57 exhibits were introduced. It would be of much more assistance to the Court if when such a broad and general allegation of evidentiary error is made, counsel would in some way identify in the certified record just what in particular the alleged errors are. In this case, all that is really said in plaintiff's Brief (p. 27-29) is that plaintiff disagrees with the Director's decision (which the Court has already assumed from this appeal) and that the Director is "expected to give some deference to his hearing officers' findings". That "some deference" standard is of course not applicable in this case because of the two tier or two level hearing and approval process set out in the rate filing statutes and which now applies to the plaintiff's filing. See, e.g.Environmental Scientific Corporation v. Durfee, 621 A.2d 200, 206-208 (R.I. 1993). In that case, at page 209, our Supreme Court discussed the so-called two tier or two level administrative hearing process and concluded that in that two tier or two level process, "the Director should give great deference not some deference to the hearing officers' findings and conclusions unless clearly wrong." While that new standard had not yet been established by our Supreme Court when Director Whitehouse made his July 31, 1992 and September 30, 1992 decisions, it is obvious to this Court that Director Whitehouse in both decisions did give great deference to the hearing officers' findings and conclusions. The Director specifically noted that he was accepting all of the findings, except those findings that could no longer be supported by the mandatory requirements of the recently enacted Workers' Compensation Reform Act. Contrary to plaintiff's assertion, Director Whitehouse's July 31, 1992 and September 30, 1992 decisions are not based upon evidentiary or philosophical differences with the hearing officers' earlier decision and recommendations, but instead on the fact that the hearing officer's findings and recommendations were all based on the rate filing statutory requirements and standards under the old 1991 law. The Workers' Compensation Reform Act which became effective on May 18, 1992 repealed and changed the former requirements and standards and mandated prospective application for all rate filing approvals by the Director of Business Regulation. Accordingly when Director Whitehouse reviewed and evaluated the hearing officers' findings and recommendations, he was required to do so in accordance with the statutory requirements set out in the 1992 Workers' Compensation Reform Act.
This Court has diligently reviewed the fifteen (15) separate hearing transcripts as well as the various exhibits that were certified to this Court. It has likewise considered the oral arguments of counsel presented at the plaintiff's request for oral argument hearing in October, 1993. It finds nothing in the certified record nor in the oral presentations of counsel that in any way supports plaintiff's contention that Director Whitehouse's July 31, 1992 and/or September 30, 1992 final decision is erroneous in view of the reliable, probative and substantial evidence in the certified record.
Accordingly, the final decision and Order of the Director of Business Regulation and as Insurance Commissioner made and effective as of September 30, 1992 is affirmed. This Court finds from its review of the record certified here pursuant to §42-35-15 R.I.G.L. that substantial rights of the appellant have not been prejudiced because of the administrative findings, inferences, conclusions or the Director's decisions, are not in violation on constitutional or statutory provisions; are not in excess of the statutory authority of the Department of Business Regulation, or made upon unlawful procedure, are not affected by other error of law, or clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, and are not arbitrary or capricious or characterized by abuse of discretion or by a clearly unwarranted exercise of the Director's discretion.
IV.
MISCELLANEOUS ALLEGATIONS OF UNLAWFUL PROCEDURE AS CONSTITUTINGERROR
Plaintiff in its Complaint and Appellate Brief contends that because of what it deems to have been unlawful procedures on the part of Directors Paradis and Whitehouse, that Director Whitehouse's July 31, 1992 decision and his later final decision on September 30, 1992 were tainted with fatal error.
It appears from plaintiff's oral argument presentation on October 5, 1993 and from its Brief, that it is contending that the Governor's October 9, 1991 letter in which he "directed" former Director Paradis to further study and not approve the hearing officers' September 30, 1991 rate increase recommendations was unauthorized, illegal and unjustified, and served to enervate Director Paradis into not complying with the "timing requirements" of § 27-7.1-10 R.I.G.L. That statute requires the Director to approve or disapprove the hearing officers' decision within 180 days from the receipt of the completed rate filing. Plaintiff next proceeds from that allegation, and in somewhat dialectic fashion, reasons that Director Paradis was somehow vincible and in fact subdued by the Governor's directive, and thereafter, acting in some sort of arrant conspiracy with Sheldon Whitehouse, the Governor's then Director of Policy, delayed action on the hearing officers' decision and recommendations until the General Assembly enacted the 1992 Workers' Compensation Reform Act, and thereafter, until Mr. Whitehouse moved from his Policy Director's position to that of Director of Business Regulation on July 13, 1992 replacing Mr. Paradis who had recently retired.
This Court finds nothing in the certified record or in either of Director Whitehouse's July 31, 1992 and September 30, 1992 decisions that enables or permits it to conclude that the Governor's October 9, 1991 letter or his alleged intervention in any way improperly induced or influenced former Director Paradis to improperly delay his final decision or later influenced Director Whitehouse in his decision making.
As for the delay in the decision process by former Director Paradis, it should be noted that contrary to plaintiff's contention that the time requirements in § 27-7.1-10 are cast in unbreakable concrete, Director Paradis' actions in postponing his decision were certainly justified under the circumstances of this case and both authorized and permitted by §§ 27-7.1-3(B);27-7.1-6; and 27-7.1-13, R.I.G.L.
It should also be noted in passing that the plaintiff, in a previous civil action filed in this Superior Court, sought by way of mandamus to have this Superior Court order Director Paradis to make and file his decision based on the time limitations contained in § 27-7.1-10 R.I.G.L. On August 4, 1993 Mr. Justice Ragosta granted a motion to dismiss that claim with prejudice. On September 16, 1993, final judgment on that dismissal, with prejudice, was entered. (C.A. 91-7096)
Plaintiff's allegation as to a "calculated scheme" by the Governor, Director Paradis and Director Whitehouse "to constructively deny plaintiff's rate filing in its entirety by intentional inaction" (Plaintiff's Brief, p. 21-26) is unsupported by the certified record except by surmise and speculation and must be summarily rejected.
Plaintiff's claim that Director Whitehouse should have recused himself from consideration of its motion to reconsider his earlier July 31, 1992 decision and that his refusal to do so violated plaintiff's due process rights is not supported by anything of substance in the record of this case. It should be noted that plaintiff was fully aware of the fact that Director Whitehouse had been the Governor's Director of Policy during the time of its rate filing and had chaired the Governor's Task Force on Workers' Compensation Reform and had participated in the enactment of the Reform Act in 1992. Despite that previous knowledge, it did or said nothing when Mr. Whitehouse first became Director of Business Regulation and took up the responsibility for making the July 31, 1992 decision on its then pending rate filing. It was not until after it received Director Whitehouse's July 31, 1992 decision, which was not favorable to its rate filing, that plaintiff first found fault with the Director's ability to be fair and impartial. It was in plaintiff's motion to reconsider that July 31, 1992 decision that the recusal request was raised for the very first time.
It is true as suggested by plaintiff that it was entitled to a fair hearing before a fair and impartial administrative agency and Director of that agency. LaPetite Auberge, Inc. v. RhodeIsland Commission for Human Rights, 419 A.2d 274 (R.I. 1980);Davis v. Wood, 427 A.2d 332, 336 (R.I. 1981). It is likewise true that an agency administrator or Director required to hear and/or decide agency matters is presumed to be neutral unless proven to be otherwise. In re Cross, 617 A.2d 97 (R.I. 1992);Gorman v. University of Rhode Island, 837 F.2d 7, 15 (1st Circ. 1988). Mere accusations however based completely upon speculation as to some vinculum between the Governor, the former Director Paradis and Director Whitehouse unsupported by anything in the certified record is insufficient to waft plaintiff's contention. That contention when viewed in the light of the certified record is plain velleity. More than suspicion and accusation is necessary. State v. Cruz, 517 A.2d 237, 240 (R.I. 1986); Statev. Clark, 423 A.2d 1151, 1158 (R.I. 1980). The burden of proving any bias or partiality was upon the plaintiff, and it failed in that burden. See, e.g. Schweiker v. McClure 456 U.S. 188 (1982).
As regards Director Whitehouse's previous position as the Governor's Director of Policy and his work on the Governor's Task Force, those facts standing alone did not require recusal. Merely because a judge or administrative hearing officer has prior knowledge of facts concerned in the matter before him does not require recusal. Neither does prior active participation in a matter that later comes again before that same judge or hearing officer mandate automatic recusal. Herald Press, Inc. v.Norberg, 122 R.I. 264, 272-273 (1979); Withrow v. Larkin,421 U.S. 35 (1975). The United State's Supreme Court as well as other courts have held that a trial judge who presided over the trial of a defendant and which was later, on appeal reversed because of the trial judge's error, could again preside at the retrial of that case. United States v. Nelson, 718 F.2d 315 (9th Cir. 1983). See also, Federal Trade Commission v. Cement Institute,333 U.S. 683 (1948).
Director Whitehouse in making his July 31, 1992 decision and thereafter reviewing same in light of the plaintiff's motion to reconsider was required to consider and appraise the record evidence presented to the hearing officers and to give great deference to the hearing officers' findings and conclusions. He was required to perform that duty in a fair and impartial manner and in accordance with all applicable and pertinent existing law. Both his July 31, 1992 and his September 30, 1992 final decision clearly reflects his compliance with that duty. The plaintiff at the hearing on its motion to reconsider had every opportunity to present any evidence that it felt would support its recusal request. A reading of that record shows clearly that the plaintiff failed to produce any evidence that required recusal.
Finally, plaintiff in its Brief does quite appropriately note the Director's misconception of § 42-6-8, R.I.G.L. concerning his ability to delegate hearing duties to his authorized department subordinates. (September 30, 1992 Final Decision, p. 9.) That misconception is however simply venial when viewed in the light of the hearing record and in no way affects or otherwise detracts from the legal sufficiency of his decision on the plaintiff's motion to reconsider.
V.
PLAINTIFF'S REQUEST FOR A DECLARATION OF RIGHTS AS TO THECONSTITUTIONALITY OF THE RATE FREEZE AND FRESH START PROVISIONSIN THE 1992 WORKERS' COMPENSATION REFORM ACT. (P.L. 1992 CHAPTER31)
Plaintiff's constitutional challenge of the Workers' Compensation Reform Act provisions in question brings into focus at the outset one of the defenses raised in the defendants' Answers and Brief. Does the single named plaintiff in this case have the requisite standing to raise and interpose 5th and 14th Amendment Federal constitutional and State Article I, § 16 constitutional due process rights which belong to others, neither named nor identified as parties to the plaintiff's Complaint? The long settled rule is of course that such rights are deemed personal rights and can only be claimed by those on whom the rights attach. State v. Ducharme, 601 A.2d 937, 940-941 (R.I. 1994).
The only named plaintiff in this action, it should be emphasized, is the National Council on Compensation Insurance. It is by its own description "a voluntary, non-profit, unincorporated statistical and rating organization with its principal place of business located at 750 Park of Commerce Drive, Boca Raton, Florida". (Plaintiff's Complaint, p. 2) It is permitted by § 27-9-8 R.I.G.L. to make rate filings on behalf of those insurance carriers which may choose to engage its services. While § 27-9-8 permits it only to make rate filings, this Court must conclude from the statute, that encompassed within that permission, is also the right to file appeals in this Superior Court pursuant to § 42-35-15 R.I.G.L. from any rate filing final decision made by the Director of Business Regulation.
However, nothing in § 27-9-8 can be construed to enlarge the scope of its rate filing permission so as to include authorization to bring civil actions or proceedings in this Superior Court for the purpose of asserting or enforcing any personal constitutional rights of insurance carriers that may be writing workers' compensation insurance in this State. It cannot by virtue of § 27-9-8 transform itself into an ombudsman for the workers' compensation carrier industry. See, e.g. Hunt v.Washington State Apple Commission, 432 U.S. 333, 343 (1977) andcompare Worth v. Seldin, 422 U.S. 490 (1977); East GreenwichYacht Club v. Coastal Resources Management Council, 118 R.I. 559
(1977).
Plaintiff's reference to § 8-2-7 R.I.G.L. in its Complaint as permitting the joinder of the various claims that are included in its Complaint is misplaced. That statute permits the joinder of those certain actions which by virtue of jurisdictional amount and/or location of real estate are included within the original jurisdiction of this Superior Court. In this case, jurisdiction for purposes of the plaintiff's administrative appeal is not by virtue of § 8-2-7, but instead, by virtue of § 8-2-14 and §42-35-15 R.I.G.L. What the plaintiff has done here is to tack on to that administrative appeal jurisdiction other various independent claims and civil proceedings for the purpose of asserting and litigating various due process and equal protection personal constitutional rights belonging to others who are not joined or identified as parties. The basic fallacy in plaintiff's procedural quagmire is revealed rather quickly when one simply considers the fact that by virtue of Rule 19(b) R.C.P. parties who ought to be joined, such as any or all of those carriers affected by the Director's September 30, 1992 final decision, and who have not been made parties here, may not be affected or bound by any final judgment entered on plaintiff's Complaint. Without reviewing the dichotomy between "indispensable" and "necessary" parties, there is missing from this action those parties whose interests are inextricably tied in to the issues presented in the complaint and who ought to have been joined. Burnham v.Washington Trust Co., 446 A.2d 769, 773 (R.I. 1982); Anderson v.Anderson, 109 R.I. 204, 283 (R.I. 1971). Plaintiff's Exhibit 42 in the certified record discloses that it represented for the rate filing process some 8 so-called "Servicing Carriers" and 10 "Largest Under 1% Groups" insurers. Which, if any, of those carriers are making the complaints alleged here by plaintiff, or are claiming that their constitutional rights have been infringed upon, as alleged by plaintiff, is left to total speculation and conjecture. This Court would be totally justified in summarily refusing to consider plaintiff's complaint as it pertains to its request for a declaration of rights pursuant to the Uniform Declaratory Judgments Act, § 9-30-1 et seq. It is perfectly obvious to this Court that any declaration of rights determination made by it in this proceeding will not terminate the controversy giving rise to plaintiff's request because it will not affect the rights of other carriers doing business in this State and not represented by the plaintiff, or if so, not made parties to this action, and will certainly leave open the opportunity for a flurry of new litigation. Section 9-30-11 in the Uniform Declaratory Judgments Act gives "broad discretion" to this Court to decline to render a declaration of rights as requested by the plaintiff. Fireman's Fund Ins. Co. v. Burman,Inc., 120 R.I. 841, 845 (1978); Thompson v. Town Council ofWesterly, 487 A.2d 498, 499 (R.I. 1985); In re City of Warwick,97 R.I. 294, 296-97 (R.I. 1964).
This Court however, because of the public interest in the expeditious resolution of the legality of the statutes in question will overlook the plaintiff's apparent lack of requisite standing, as well as its procedural deviations, and address its request for a declaration of rights pursuant to the Uniform Declaratory Judgments Act. Blackstone Valley Chamber of Commercev. Public Utilities Commission, 452 A.2d 931, 933 (R.I. 1982);Rhode Island Opthalmological Society v. Cannon, 113 R.I. 16, 26 (1974); compare, Hunt v. Washington State Apple AdvertisingCommission, 432 U.S. 333 (1937); Worth v. Seldin, 422 U.S. 490
(1937); Sierra Club v. Morton, 405 U.S. 727, 739 (1972).
Plaintiff asserts that the 1992 Workers' Compensation Reform Act "rate freeze" and "Fresh Start" provisions in § 27-7.1-22
R.I.G.L. providing for a limited premium rate freeze and alternative cost recovery mechanisms for carriers doing business in Rhode Island are unconstitutional. It claims that because of those statutory provisions its property is being taken without just compensation in violation of its rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, § 16, of the Rhode Island Constitution. It apparently postulates its contention upon the Federal District Court's decision in the Medical Malpractice UnderwritingAssociation v. Paradis, 756 F. Supp. 669 (D.C.R.I. 1991) case and our Supreme Court's "taking" of private property guideline factors set out in the recent so called DEPCO case, In reAdvisory Opinion to the Governor, 593 A.2d 943, 949 (R.I. 1991).
Plaintiff contends that the rate freeze and recoupment features in the challenged statutes here concerned is "on all fours" with the Medical Malpractice Underwriting Association
case. (Plaintiff's Brief, p. 34) It also asserts that the "Fresh Start" provisions in the 1992 Reform Act acknowledges that carriers such as those represented by it at the rate filing will incur deficits over the period of the next two policy years and that the recoupment mechanism provided in the 1992 Reform Act will not provide full, but only partial recoupment, and without interest. It projects in its Appellate Brief that recoupment will be 90% of deficits incurred in the policy year beginning June 1, 1992 through December 31, 1992 and 75% for the policy year beginning January 1, 1993 and ending December 31, 1993. It asserts also in its Appellate Brief (p. 30) that it will be able to demonstrate those "actual deficits". The difficulty with that statement is, of course, that the plaintiff is not an insurer or carrier, and it does not identify which, if any, of its represented carriers it is referring to. Any projection of the anticipated deficits, as previously noted from its Appellate Brief, are not of course reflected in the certified record. These are simply counsels sessile post hearing projections which have never been subjected to any impartial analysis. Accordingly, this Court cannot go beyond the certified record before it, and, in any event rely upon statements of counsel as being evidence. The irrefragable fact is that statements of counsel are not evidence, and propriety in rate fixing by an administrative agency or department cannot be determined on theory. Federal PowerCommission v. Hope Natural Gas Co., 320 U.S. 591, 602 (1944).
Taking up next plaintiff's contention that the 1992 Workers' Compensation Reform Act which became effective on May 18, 1992, some time after the completion of the public hearings on its rate filing, should not have been utilized by Director Whitehouse. The validity of that contention turns on the constitutionality of the Reform Act. If it meets constitutional muster, the answer to plaintiff's challenge is simple. The Reform Act repealed the former statutes upon which the plaintiff's rate filing was made, and by its terms mandated application of the Reform Act to plaintiff's filing. § 27-7.1-3. That brings this Court to next consider the plaintiff's challenge to the constitutionality of the Workers' Compensation Reform Act of 1992, P.L. 1992, ch. 31. In so doing, this Court must presume the validity of that legislative enactment, and the burden of persuading the Court otherwise is upon the plaintiff. Brennan v. Kirby,529 A.2d 633, 639 (R.I. 1987). The plaintiff here has the burden of convincing this Court, beyond a reasonable doubt, that the Reform Act is contrary to some specific Federal or State constitutional provision or necessarily implied from some provision therein. Inre Advisory Opinion to the Governor, 593 A.2d 943, 946 (R.I. 1991). The 1992 Reform Act in question, as correctly noted by the Director in his July 31, 1992 and September 30, 1992 decisions was enacted in the midst of the workers' compensation insurance crisis existent in this State at the time of its enactment. The General Assembly, in its wisdom, decided to resolve that then pending, and ever widening, crisis by enacting the Reform Act with its temporary rate freeze and recoupment mechanism features in hopes of staying the crisis and providing for an orderly emergence from it. This Court must view the 1992 Reform Act in light of the circumstances and purpose that motivated its enactment. The General Assembly is given great discretion in dealing with such public emergencies and that discretion, while not unlimited, ought not to be lightly tampered with by the Judicial branch of government. Legislative enactments such as concerned here should be given great deference. Advisory Opinionto the Governor, 113 R.I. 586, 593 (R.I. 1974). The plaintiff here claims that its property has been taken by the enactment and application of the Reform Act to its rate filing without due process of law in violation of its 5th and 14th Amendment Federal constitutional rights and in violation of its rights under Article I, § 16 of the Rhode Island Constitution. In determining whether an unconstitutional taking has taken place, the United States Supreme Court as well as our Supreme Court has identified three factors that should be examined when considering that contention. Connolly v. Pension Benefit Guaranty Corp., 475 U.S. 211, 224-225 (1986); See also, In re Advisory Opinion to theGovernor, 593 A.2d 943, 949 (R.I. 1991). Those factors are, (1) the nature and character of the legislation, (2) the economic impact of the legislation on the plaintiff and (3) the extent to which the legislation has interfered with distinct investment-backed expectations.
Examination of the plaintiff's challenge to the Workers' Compensation Reform Act provisions concerned in this case in light of those factors reveals that the plaintiff has failed in its burden of proving, beyond a reasonable doubt, that the statutory provisions in question are unconstitutional.
Plaintiff's claim that its property was and is being taken for public use without just compensation in violation of its 5th and 14th Amendment Federal constitutional and Article I, § 16 State constitutional rights, is totally unsupported by the record certified to this Court. Nothing in that record shows the taking of any private property from the plaintiff itself by the provisions of the 1992 Workers' Compensation Reform Act. In addition, nothing in that record shows that any particular identified carrier that it represented can attribute any taking of its private property to the Reform Act provisions. Plaintiff's represented carriers evidence of any losses or projected losses, estimated for purposes of obtaining the rejected premium rate increase concerned in this litigation were all incurred or projected pursuant to the former provisions of Title 27. The 1992 Reform Act repealed those loss causing, if any, provisions and enacted provisions which provide for procedures insuring various controls regarding carrier costs and expenses, and operating standards to be met for future rate filing purposes. Plaintiff's Appellate Brief (p. 30) projections concerning its anticipated losses for the 1992-1993 years are simply plaintiff's counsel's appellate statements which cannot be considered by this Court as evidence. The "rate freeze" which is part of the 1992 Reform Act, despite plaintiff's future fear projections, distinguishes it from the "rate freeze" provision involved in Medical MalpracticeJoint Underwriting Association of Rhode Island v. Paradis, 756 F. Supp. 669 (D.C.R.I. 1991) and relied upon by the plaintiff. In that case, the Federal Court's finding of a taking was justified. On the facts here, such finding would not be. Whether the 1992 Reform Act will have any adverse impact upon the plaintiff, or any one particular carrier that it represented will never accurately be determined until there is evidence available with regard to any particular carrier's actual writing experiences carried out in accordance with the 1992 Reform Act. See,e.g., Kansas Health Care Association Inc. v. Kansas Departmentof Social and Rehabilitative Services, 958 F.2d 1018, 1022-1023 (10th Cir. 1992); Tenoco Oil Co. v. Department of ConsumerAffairs, 876 F.2d 1013 (1st Cir. 1989). This Court agrees with the defendant's contention that until such time as the plaintiff, or any particular insurer can "show an actual loss history notwithstanding the cost-reducing mechanisms in the Reform Act, and unsuccessfully applies for recapture of any loss pursuant to the Reform Act provisions providing for recapture, there can be no finding that a "taking" has occurred. (Defendant's Brief, p. 34.) The mere fact that the Director failed to grant the plaintiff's rate increase request which was filed under the former law does not, in and of itself, deprive the plaintiff, or any of the carriers that it represented for the rate filing, of any of their claimed constitutional rights. National Council onCompensation Insurance v. Superintendent of Insurance,481 A.2d 775, 781-82 (Mo. 1984). Plaintiff's projected anticipated loss of business profit cannot measure up to the required "taking" for purposes of supporting the constitutional challenges being made in this case. E. J. Inc. v. Redevelopment Agency,122 R.I. 288, 294 (1979).
Because of this Court's finding that plaintiff has failed to prove any "taking" of its property by reason of the 1992 Reform Act, that finding, when applied to the three factor guidelines set out in Connolly v. Pension Benefit Guaranty Corp., supra, andIn re Advisory Opinion to the Governor, 593 A.2d 943, 949 (R.I. 1991), compels this Court to conclude that the plaintiff has failed in its burden of proving here, beyond a reasonable doubt, that it, or any specific carrier represented by it, has incurred any real injury or loss that can be attributed to the "rate freeze" and "Fresh Start" provisions in the 1992 Workers' Compensation Reform Act and which measure up to the requisite standard for an unconstitutional taking.
Accordingly, this Court in responding to the plaintiff's requests for a declaration of its rights under the 1992 Reform Act, declares that Act to be Constitutional, and applicable to the plaintiff's rate filing that was denied by Director of Business Regulation Whitehouse on September 30, 1992.
Plaintiff's contention, raised in Count III of its Complaint as to P.L. 1992, ch. 31, § 30 (the Reform Act) depriving it of equal protection under the law as guaranteed by the 14th Amendment to the United States Constitution and by Article I, § 2 of the Rhode Island Constitution is, based upon its unsupported general presentation, without any specifics and authorities, summarily rejected. The 1992 Reform Act has reasonable basis for enactment and is not arbitrary because it applies to all workers' compensation carriers doing business in this State and permits of no exceptions and creates no favored class. Henry v. Earhart,553 A.2d 124, 126-127 (R.I. 1989).
Because of the Court's finding with regard to the constitutionality of the 1992 Workers' Compensation Reform Act "rate freeze" and "Fresh Start" provisions, the plaintiff's requests for injunctive relief in Counts II, III, IV and V are denied and its claims for costs and reasonable attorneys' fees in accordance with § 1988, 42 U.S.C. are likewise denied.
Counsel will prepare the appropriate judgment for entry by the Court within ten (10) days from the date of this decision.