BLACKSTONE VALLEY CHAMBER OF
COMMERCE et al.

v.

PUBLIC UTILITIES COMMISSION.

No. 80–236–M.P.

Supreme Court of Rhode Island.

Nov. 17, 1982.

James F. McCoy, Pawtucket, Sullivan &
Worcester, Robert G. Bleakney, Jr., David

A. Fazzone, Alicia R. Lopez, Boston, Mass., for petitioners.

Dennis J. Roberts II, Atty. Gen., John R. McDermott, Sp. Asst. Atty. Gen., Carl Ira Freedman, Rhode Island Legal Services, Inc., Providence, for intervenor, The Coalition for Consumer Justice.

## OPINION

SHEA, Justice.

These matters come before the court on a statutory petition for certiorari issued pursuant to the terms of G.L.1956 (1977 Reenactment) § 39–5–1. The Blackstone Valley Chamber of Commerce (the chamber) filed the petition seeking review of actions by the Public Utilities Commission (the commission). Specifically, the chamber contends that the commission's order replacing the declining block residential rate structure with a flat rate structure lacks a sufficient evidentiary basis and violates statutory law.

On December 1, 1979, the commission consolidated for hearing and decision three pending dockets involving the Blackstone Valley Electric Company (the company). Docket No. 1439 related to the company's request for a general rate increase, and docket Nos. 1184 and 1185 involved cases whose records were reopened and supplemented as a result of this court's decision in *Blackstone Valley Chamber of Commerce v. Public Utilities Commission*, R.I., 396 A.2d 102 (1979). In that case, the chamber challenged the commission's order exempting the first 300 kilowatt hours (KWH) consumed per month by residential users from a general rate increase. The challenged action altered the revenue responsibility of each customer class.[1] This court held that the exemption to residential users lacked a sufficient evidentiary basis and remanded the case to the commission for further proceedings.

On May 13, 1980, the commission issued an order on the three pending dockets involving the company. The order provided for an across-the-board rate increase in revenue allocations among classes and in the rate structure within classes. It also changed the structure of residential rates from a declining block rate to a flat rate.[2] The chamber's petition challenges only the alteration of the residential rate structure. Neither the company nor the Coalition for Consumer Justice, an intervenor below, challenged this order. Only the chamber applied to this court for relief.

The threshold question raised by this petition concerns whether the chamber has alleged facts that entitle it to obtain judicial review of the challenged action. Section 39–5–1 provides that,

"[a]ny person aggrieved by a decision or order of the commission may, within seven (7) days from the date of such decision or order, petition the supreme court for a writ of certiorari to review the legality and reasonableness of said decision or order."

In other words, § 39–5–1 confers standing only on persons "aggrieved by a decision or order of the commission."

∎ Standing is an access barrier that calls for the assessment of one's credentials to bring suit. "It is what entitles one to obtain an adjudication and thus confers a right to review but not necessarily to relief." Albert, *Standing to Challenge Ad-*

---

1. Regulatory theory requires class-by-class determinations of the cost of service. As a result, utility rates are in large measure the product of classification. There are four basic groupings used to classify electric utility customers: residential, commercial, industrial and street lighting.

   The commission faces two problems in determining the proper utility rates: (1) it must ensure that the several classes of rates will in the aggregate produce enough revenue to cover the total cost of providing service, and (2) it must avoid unjust or undue discrimination between classes. 1 Priest, *Principles of Public Utility Regulation* at 340–41 (1969).

2. Under a declining block rate the cost per KWH decreases as the volume of usage increases. *Rhode Island Chamber of Commerce Fed'n. v. Burke*, R.I., 443 A.2d 1236, 1238 (1982). Whereas under a flat rate the cost per KWH remains the same regardless of the volume of usage. Tomain, *Energy Law in A Nutshell* at 119 (1981).

*ministrative Action: An Inadequate Surrogate for Claim for Relief* 83 Yale L.J. 425, 427 (1974). In other words, standing involves a threshold inquiry into the parties' status before reaching the merits of their claims. The essence of the question of standing is whether the party seeking relief has alleged such a personal stake in the outcome of the controversy as to ensure concrete adverseness that sharpens the presentation of the issues upon which the court depends for an illumination of the questions presented. *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, 678 (1962).

■ This court has, on rare occasions, overlooked the question of standing and proceeded to determine the merits of a case because of substantial public interest in having a matter resolved before the question presented became moot. *Sennott v. Hawksley,* 103 R.I. 730, 732, 241 A.2d 286, 287 (1968). Because petitioner has failed to show that there is a substantial public interest in the resolution of this matter or that a delay may render the issue moot, we are not faced with a situation in which review should be granted without a preliminary inquiry of standing. Also, this case arose under a specific statutory scheme relating to the setting of utility rates, which provides for review only when an "aggrieved" party petitions for certiorari.[3] We are unwilling to alter this statutory scheme without a showing that our failure to do so

would result in substantial harm to the public at large.

■ The Rhode Island rule of standing requires that the person seeking review merely show "injury in fact, economic or otherwise," resulting from the challenged order. *Rhode Island Ophthalmological Society v. Cannon,* 113 R.I. 16, 26, 317 A.2d 124, 129 (1974). "The line is not between a substantial injury and an insubstantial injury. The line is between injury and no injury." *Matunuck Beach Hotel, Inc. v. Sheldon,* R.I., 399 A.2d 489, 494 (1979) (quoting Davis, *Administrative Law of the Seventies* § 22.02–10 at 507 (1976)). Although this court has liberalized standing requirements to the point of allowing certain suits to protect the public interest, petitioner must still allege a personal stake in the controversy—his own injury in fact—before he will have standing to assert the broader claims of the public at large. *See Berberian v. Solomon,* R.I., 405 A.2d 1178, 1180 (1979); *East Greenwich Yacht Club v. Coastal Resources Management Council,* 118 R.I. 559, 376 A.2d 682 (1977).

> "[M]ere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved' * * *." *Sierra Club v. Morton,* 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636, 645 (1972).[4]

**3.** Most administrative appeals arise under the Administrative Procedures Act (APA). General Laws 1956 (1977 Reenactment) chapter 35 of title 42. Under the APA an aggrieved party may appeal an agency decision to the Superior Court or where expressly provided by law, to the sixth division of the District Court. Section 42–35–15, as amended by P.L.1981, ch. 40, § 1. After the Superior or District Court renders a decision any party in interest, if aggrieved, may petition this court for a writ of certiorari to review any questions of law presented. Section 42–35–16.

On the other hand, a person aggrieved by a decision or order of the Public Utilities Commission, may directly petition this court for a writ of certiorari to review the legality and reasonableness of the decision or order. Thus, this court's review of utility cases is direct and broader than its review of cases arising under the APA.

**4.** The chamber does not qualify as an agency "not technically aggrieved," which may obtain review under the exception enunciated in *Altman v. School Comm. of Scituate,* 115 R.I. 399, 347 A.2d 37 (1975). The *Altman* exception applies only to an *agency* that wishes to challenge a judgment that will otherwise escape review. Before obtaining review, the agency must demonstrate that "the public has an interest in the issue at stake which reaches out beyond that of the immediate parties." *Id.* at 403, 347 A.2d at 39.

The chamber does not qualify as an agency as defined in § 42–35–1(a). *See Adams v. United Developers, Inc.,* R.I., 397 A.2d 503, 505 n. 2 (1979). Moreover, the issue at stake does not appear to reach out beyond that of the immediate class affected as contemplated in *Buffi v. Ferri,* 106 R.I. 349, 351, 259 A.2d 847, 849 (1969). Lastly, unlike most administrative

■ Although the record is devoid of any reference to the membership or the purpose of the chamber, it is generally recognized that the chamber represents the interests of business enterprises. However, the aspect of the order it challenges, the commission's flattening of residential rates, only affects residential users. The order does not alter the revenue responsibility of each customer class. Thus, the chamber's petition does not present any facts that demonstrate that it or any of its members are adversely affected by the commission's order flattening residential rates. The petition merely contains a conclusory statement that the chamber is aggrieved by the order of the commission. Such a statement is insufficient to entitle petitioner to maintain this litigation.

■ The petitioner contends that it has standing because it intervened in docket Nos. 1184 and 1185 before the commission and petitioned the original order in those dockets which resulted in this court's decision in *Blackstone Valley Chamber of Commerce v. Public Utilities Commission,* R.I., 396 A.2d 102 (1979). The case at bar differs from the chamber's previous petition which involved a situation where the commission's 300 KWH exception to residential users altered the revenue allocations of each customer class. Therefore, the chamber was aggrieved by the commission's previous order.

As we stated previously, under § 39–5–1 one can only seek review by this court if he is aggrieved by the commission's order. The right of a party to intervene and to present evidence to the commission is quite different from standing to obtain judicial review. One who seeks review has the burden of setting the judicial machinery in motion by establishing that he is aggrieved and has a right to redress whereas one who intervenes before the commission is not set-

ting machinery in motion but is trying to influence the course of action that is already in progress. 3 Davis, *Administrative Law Treatise* § 22.08 (1958). Therefore, "[t]he mere fact that [petitioner] was permitted to intervene before the Commission does not entitle it to institute an independent suit to set aside the Commission's order in the absence of resulting actual or threatened legal injury to it * * *." *Pittsburgh & West Virginia Railway Co. v. United States,* 281 U.S. 479, 486, 50 S.Ct. 378, 381, 74 L.Ed. 980, 983 (1930).

The requirement that a party seeking review must allege facts that he is himself aggrieved does not insulate the commission from judicial review, nor does it prevent the public interest from being protected through the judicial process. It merely puts the decision regarding whether review will be sought into the hands of those who have a direct stake in the outcome. *Sierra Club v. Morton,* 405 U.S. at 740, 92 S.Ct. at 1368–69, 31 L.Ed.2d at 646. "There are no better or worse plaintiffs, only those with or without a claim." Albert, *supra,* 83 Yale L.J. at 426.

As we conclude that the chamber lacks standing to maintain this action, we do not reach any other questions raised by the petition.

The writ of certiorari heretofore issued is quashed as having been improvidently issued. The papers of the case are remanded to the Public Utilities Commission with our decision endorsed thereon.

---

appeals, utility appeals proceed directly to the Supreme Court without any intermediate review. For the *Altman* exception to apply, the commission would have to challenge its own order. Therefore, it would appear unlikely that the *Altman* exception would ever apply to a utility case.