DECISION
The Defendants have filed a Motion to Dismiss Robert Arruda ("Arruda") for lack of legal standing and a Motion to Dismiss the Plaintiffs' Amended Complaint. The Plaintiffs object to both motions. The parties have also filed a Stipulation of Facts and admitted thirty-three (33) exhibits into evidence.
It is important to note that this case is not about whether the regulation pertaining to gifts promulgated by the Rhode Island Ethics Commission ("Commission") is appropriate or proper. The parties themselves have agreed that the Commission indeed has the authority under the Constitution to promulgate rules pertaining to the Code of Ethics. See In re Advisory Opinion to the Governor (Ethics Commission), 612 A.2d 1
(R.I. 1992). The narrow issue that is involved in this case is whether the Commission properly followed procedural requirements while promulgating Regulation 36-14-5009 pertaining to gifts. The pertinent facts are as follows.
 Facts/Travel
On July 11, 2000, the Plaintiffs filed an action for injunctive relief "seeking to enjoin the effective date of the amendment to Rhode Island Ethics Commission Regulation 36-14-5009, Prohibited Activities — Gifts." The Plaintiffs are also seeking declaratory relief as to the validity or applicability of Regulation 5009 pursuant to R.I. Gen. Laws §§ 42-35-3 (c) and 7. On October 13, 2000, this Court then granted the Plaintiffs' Motion to Amend their Complaint and Motion for Joinder as to John Patterson. The Plaintiffs allege that (1) the "Defendants failed to provide proper notice of their intended action in violation of R.I. Gen. Laws § 42-35-3 (a)(1); (2) the "Defendants failed to demonstrate the need for adoption of the amendment to Reg. 5009 and failed to demonstrate no alternative approach less burdensome in violation of R.I. Gen. Laws § 42-35-3 (a)(3); (3) the "Defendants failed to identify and justify overlap or duplication with any other state regulation in violation of R.I. Gen. Laws § 42-35-3 (a)(4) [sic]; (4) the "Defendants failed to determine whether the amendment to Reg. 5009 would have an adverse impact on small business in violation of R.I. Gen. Laws § 42-35-3 (a)(4); and, (5) there was a violation of R.I. Gen. Laws §§ 36-14-1, et. seq. by three of the Defendants which compromised the adoption of the amendment of Reg. 5009.[1]
 Motion to Dismiss Robert Arruda
In Rhode Island, when deciding an issue of standing, a court must determine "whether the person whose standing is challenged has alleged an injury-in-fact resulting from the challenged [act]." Pontbriand v. Sundlun. 699 A.2d 856, 861 (R.I. 1997) (citing Rhode Island Opthalmological Society v. Cannon, 317 A.2d 124 (R.I. 1974)). "Sometimes referred to as the `injury in fact' requirement, this has been described by Justice Scalia in an oft-quoted passage as `an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical.'" Pontbriand, 699 A.2d at 863. The injury-in-fact may be economic or otherwise. Id. at 863 (quoting Cannon at 129). "The line is not between a substantial injury and an insubstantial injury. The line is between injury and no injury." Blackstone Valley Chamber of Commerce vs. Public Utilities Commission452 A.2d 931, 933 (R.I. 1982).
"The essence of the question of standing is whether the party seeking relief has alleged such a personal stake in the controversy as to ensure concrete adverseness that sharpens the presentation of the issues upon which the court depends for an illumination of the questions presented." Blackstone, 452 A.2d at 933. "This court has, on rare occasions, overlooked the question of standing and proceeded to determine the merits of the case because of substantial public interest in having a matter resolved before the question presented became moot." Id. However, a person must still allege a "personal stake in the controversy — his own injury in fact — before he will have standing to assert the broader claims of the public at large." Id. "Standing involves a threshold inquiry into the parties' status before reaching the merits of their claims." Id.
In the present case, the Defendants argue that Arruda lacks standing because he cannot establish an invasion of a legally protected interest which is concrete, particularized, actual, or imminent. They state that Arruda, as a lobbyist registered with the Office of the Secretary of State in his capacity as Chairman of Operation Clean Government, does not fall into any of the categories provided in R.I.G.L. § 36-14-4, the Code of Ethics.[2] As a result, they claim, Arruda is not subject to the Code of Ethics and therefore not subject to the provisions of Regulation 5009, the statute at issue in the present action.
The Plaintiffs object to the Motion and state that Arruda is not only the Chairman of Operation Clean Government, but also a small businessman who owns and operates Quality Behavioral Health, Inc. ("Quality"). They argue that Quality has coordinated lobbyist efforts in the mental health community regarding legislation concerning their interests. Arruda, in a sworn affidavit, states that as a small businessman, he does not have the same ability to lobby lawmakers in the same fashion as large corporations, and he is concerned that the amendment to Regulation 5009, which lifts the flat gift ban, will create a disadvantage to him in competing for access to policy makers regarding rules or legislation which affect the economic position of his business. As a result, the Plaintiffs argue, Arruda has standing in that he has demonstrated an injury in fact, which is economic in nature, and that he is an "interested person" as defined by Regulation 36-14-5009 (c).
"Interested person," as defined by Regulation 36-14-5009 (c), "means a person or a representative of a person or business that has a direct financial interest in a decision that the person subject to the Code of Ethics is authorized to make, or participate in the making of, as part of his or her official duties." Mr. Arruda, as a lobbyist for his business and the mental health community is an interested person as defined by the Regulation. Although he may not be subject to the Code of Ethics himself, he certainly could be affected by the decisions of someone who is subject to the Code of Ethics. Accordingly, Mr. Arruda has stated an injury in fact sufficient to give him the requisite legal standing to bring this suit. He has also alleged a personal stake in the controversy. Therefore, without reaching the merits of the Plaintiffs' claims, the Defendants' Motion to Dismiss Robert Arruda for lack of standing is denied.
 Motion to Dismiss Amended Complaint I Arguments
In their Motion to Dismiss, the Defendants first argue, as proponents of the amendment to Commission Regulation 36-14-5009, that the Commission complied with R.I.G.L. § 42-35-3 (a)(1) "by providing proper notice of its intended action to amend Regulation 5009." Although the Plaintiffs argue that "the content of the proposed amendment to Reg. 5009 was modified in a "substantive' manner [which] constitutes the failure to comply with R.I.G.L. § 42-35-3 (a)(1), the Defendants assert that the public and the Plaintiffs had adequate notice as to the issues involved in the proposed amendment. The Defendants argue that the issues surrounding the final modifications were in fact extensively commented upon during the hearings, and the modifications that appeared in the amended regulation that was filed with the Secretary of State were slight and in character with the discussions at the hearings.
Second, the Defendants argue that the Commission record demonstrates the need for the amendment to the regulation and that no alternative approach would be as effective and less burdensome in compliance with R.I.G.L. § 42-35-3 (a)(3). In support of that assertion, the Defendants cite testimony and discussion from Professor Cornwell, a former parliamentarian for the Rhode Island House of Representatives and a professor at Brown University; Senator John Roney; Commissioner Flanagan; and Chief Legal Counsel to Governor Almond, Joseph Larisa. Their testimony, the Defendants claim, along with the extensive discussions involving alternatives to the regulation, are sufficient to find a reasonable basis for amending the regulation that satisfies the requirements of R.I.G.L. § 42-35-3 (a)(3).
Third, the Defendants again argue that the record reveals that the Commission also complied with R.I.G.L. § 42-35-3 (a)(3) in determining whether there was an overlap or duplication with any other state regulation. The Defendants state that not only does the amendment deal with a regulation which is already in effect, but the amended regulation specifically contains language excluding any overlap or duplication, namely in the area of campaign contributions. Moreover, the Defendants argue that the Commission was mindful of its obligations under the statute and did not identify any overlap or duplication because none existed.
Fourth, the Defendants maintain that not only does the record indicate that the Commission considered the effect the proposed amended regulation would have on small businesses according to R.I.G.L. § 42-35-3
(a)(4), but it reveals testimony that was actually received regarding the impact the amendment would have on small businesses.
Lastly, the Defendants assert that the Court may not substitute its judgment for that of the Rhode Island Ethics Commission when it adopts or amends a regulation pursuant to its rulemaking authority, and that the Plaintiffs may not circumvent the jurisdiction of the Ethics Commission in alleging to the Superior Court that Defendants Thomas D. Goldberg, Robin Main, and Melvin Zurier violated the Code of Ethics.
The Plaintiffs, opponents of the Commission's amendment to Regulation 36-14-5009, argue in support of their Amended Complaint that the deletion of the words "ask, demand or solicit," with no prior notice to the public, does not comport with the remarks of the Chairman made during the hearings. The deletion also represents, the Plaintiffs claim, a significant change in the proposed amendment to regulation 5009 that requires re-notification to the public in order to satisfy R.I.G.L. § 42-35-3 (a)(1). The Plaintiffs assert that the same argument can be made for the reduction in the dollar threshold amount, namely the change from $750 to $450.
Next, the Plaintiffs provide that the Commission did not satisfy its requirements under R.I.G.L. § 42-35-3 (a)(3) because they did not show the requisite need for an amendment. The Plaintiffs argue that the Defendants cannot merely rely on comments received by the public in showing that the amendment is in fact needed. Along that same argument, the Plaintiffs claim that the Defendants ignored public comments, and as a result, demonstrated that they failed to consider any alternative approach to amending the regulation.
The Plaintiffs also argue that the Commission failed to identify and justify an overlap and duplication with another statute, namely Rhode Island's statutes regarding campaign finance and contributions. The Plaintiffs claim that the reporting requirements found in R.I.G.L. §17-25-3 (3) and the reporting requirements in the amendment to regulation 5009 create confusion in that they both involve the reporting of a "gift or other thing of value." The record, the Plaintiffs claim, contains no evidence or information that the Defendants even considered such an overlap.
Lastly, in reference to the Count that includes Defendants Thomas D. Goldberg, Robin Main, and Melvin Zurier, the Plaintiffs argue that they are merely requesting that this Court "enjoin the effective date of the amendment to Reg. 5009 until the complaints currently pending against these three (3) of the Defendants, which allege that they violated the Code of Ethics by acting as public officials to discuss, review and vote on the amendment to Regulation 36-14-5009, are finally adjudicated."
 II The Rhode Island Ethics Commission
Early in 1986, in response to "public outcry for reform at all levels of government, an ethics committee was set up as part of the constitutional convention and given the task of examining unethical governmental conduct and proposing measures to bring about ethical reform that would ultimately restore the public trust." In re Advisory Opinion to the Governor (Ethics Commission) 612 A.2d 1, 2 (R.I. 1992). Later in the same year, an amendment to Rhode Island's Constitution was approved "whereby an independent non-partisan ethics commission would be formed to oversee ethics in State Government." Id. at 3. The Rhode Island Supreme Court has noted that the intent of the framers of this amendment "was to empower the commission with the authority to develop a code of ethics, to investigate violations, and to enforce its provisions, always subject to review by the judicial branch of government consistent with the Constitution." Id. at 10-11.
The opponents of the amendment argued that "if the commission were to be empowered with legislative rule-making authority, the practical effect would be to create a fourth branch of government, a so-called super legislature, that would perform its functions without any of the usual checks and balances associated with our form of government. . . ." Id. at 14. The Court refused to adhere to that declaration, however, and stated that "the creation of the commission has not resulted in the establishment of a fourth branch of government." Id. at 20. Rather, it noted that this jurisdiction "has consistently recognized the authority of the General Assembly to create administrative agencies and the authority of the Governor to appoint officials." Id. at 17. The Court further assured that "the commission, like any other governmental body is subject to many of the usual checks and balances associated with our tripartite form of government," and, "like other `agencies,' as the term is defined by § 42-35-1 of the APA, the commission is subject to the provisions contained therein, including the judiciary's power to review the commission rulemaking functions as set forth in § 42-35-7."[3]
Id. at 18. Finally, the Court remarked that "[t]he people have simply vested in the commission a limited share of legislative power to make law in the area of ethics." Id. at 20.
 III Ethics Commission Regulation 36-14-5009 A. R.I. Gen. Law 42-35-3 (a)(1)
As previously noted, the Commission must give thirty days notice of any intended action to adopt, amend or repeal any rule of the agency. See R.I.G.L. § 42-35-3. The notice must "include a statement of either the terms or substance of the intended action or a description of the subjects and issues involved, and of the time when, the place where, and the manner in which interested persons may present their view thereon. Id. One of the main issues involved in the present action is not whether the Commission complied with the time requirements of the statute, but rather whether the notice the Commission did provide to the public was sufficient in that the notice and the subsequent hearings properly represented the final amendment on which the Commission adopted.[4]
In Basf Wyandotte Corp. v. Castle, 598 F.2d 637, 642 (C.A. 1 1979), a case that both parties cited, the Court noted that "procedural rules [such as the APA] were meant to ensure meaningful public participation in agency proceedings, not to be a straitjacket for agencies." It also noted that [a]n agency's promulgation of proposed rules is not a guarantee that those rules will be changed only in ways the targets of the rules suggest." Id. "Even substantial changes in the original plan [in this case, the proposed alternatives or the proposed amendments as of May 1, 2000] may be made so long as they are "in character with the original scheme' and "a logical outgrowth' of the notice and comment already given." Id. (citing South Terminal Corp. v. EPA, 504 F.2d 646, 658-59 (1st Cir. 1974)).
The "essential inquiry is whether the commenters have had a fair opportunity to present their views on the contents of the final plan." Id. The court "must be satisfied, in other words, that given a new opportunity to comment, commenters would not have their first occasion to offer new and different criticisms which the Agency might find convincing." Id. (citing Weyerhaeuser Co. v. Costle 590 F.2d 1011, 1031 (D.C. Cir. 1978)). Thus, the Court in Basf Wyandotte stated, "where the final rules "are the result of a complex mix of controversial and uncommented upon data and calculations,' remand may be in order." Id. (citing Weyerhaeuser, 590 F.2d at 1031.
The Plaintiffs complain that new substantial changes were adopted by the Commission that were never contemplated within the prior notices that were advertised to the public thirty days prior to the hearing. As a result, they argue that the Commission failed to give proper notice of their intended action in violation of R.I. Gen. Laws §42-35-3 (a)(1). Specifically, the Plaintiffs argue that the deletion of "shall ask, demand or solicit" and the change of the dollar threshold amount from $750 to $450 warrant re-notification. This Court disagrees.
Two notices were advertised in the Providence Journal. The first was advertised on January 14, 2000 for the February 15, 2000 hearing, and the second was advertised on April 1, 2000 for the May 1, 2000 hearing. They both contained the following relevant language:
 "The Rhode Island Ethics Commission, pursuant to R.I. Gen. Laws 42-35-3, will hold a public hearing and vote on the adoption of proposed additions and amendments to the Code of Ethics for public officials and employees as follows:
 Regulation 36-14-5009 (Gifts).
 The Public hearing and vote on the proposed regulations will be held on [Tuesday, February 15, 2000, 10:00 a.m. and Monday, May 1, 2000, 10:00 a.m.], at the offices of the Rhode Island Ethics Commission, 40 Fountain Street, 8th Floor, Providence, RI.
 Persons interested in testifying at the hearing may contact the Commission office at (401) 222-3790 or may attend the hearing and sign up to testify at that time. Written materials may be submitted to the Commission offices at the address listed above, by faxing materials to the Commission offices at (401) 272-6680 or at the public hearing. Persons may obtain copies of the current Code of Ethics and the proposed additions and amendments at the Commission offices or by calling (401) 222-3790. . . ."
The above notice was filed thirty days prior to the scheduled hearings. It not only contains the "substance of the intended action" and a broad "description of the subjects and issues involved," but it also properly contains the time, place and manner in which interested persons may present their views. The subject of the hearings was to discuss proposed additions and amendments to the Code of Ethics for public officials and employees concerning Regulation 36-14-5009 (Gifts). Also available were suggested alternatives of the present "zero tolerance" regulation that was currently in effect.
In regard to, the change of the dollar amount from $750 to $450, it cannot be stated that the public did not have meaningful discussion on the topic or that the reduction in the amount was not in character with the original notice or testimony at the hearing. In fact, according to the record of the hearings, it appears that certain members of the Commission may have been affected by some public comments that if they could not have "zero tolerance," then they would suggest a lower amount than $750. See e.g., Exhibit 28, RIEC Transcript, May 1, 2000, pp. 26-27. The record is replete with testimony concerning the change in the dollar amount. It not only shows that there was meaningful discussion on the particular subject of the dollar amount, but it also shows that commentators had a fair opportunity to discuss their viewpoints. See e.g., Exhibit 28, RIEC Transcript, May 1, 2000, pp. 3-4, 26-27, 34-35; Exhibit 23, RIEC Transcript, February 15, 2000, pp. 4-6, 37-39, 52-53. Furthermore, the proposed alternatives offered by the Commission and the notice advertised in the Providence Journal is not meant to set strict parameters as to what and what not the Conmission can finally act upon. Rather, any proposed rule or amendment, as well as the advertised notice, are meant to give "meaningful notice to the public of what action was contemplated by the agency, and to give persons a "reasonable opportunity' to comment thereon." See Burgess v. Affleck, 683 F.2d 596, 602 (1st Cir. 1982) (citations omitted).
With that in mind, the same result is reached when reviewing the deletion of the words "shall ask, demand or solicit." The notices that were advertised in the Providence Journal encompassed the entire gift regulation, and the proposed rules were sufficiently developed in that the public was aware of the possible amendments or changes to be made. Id. The fact that the Chairman of the Commission expressed his opinion that he thought a re-notification may be required if certain, changes were made carries the weight of only one vote. It does not automatically follow that a re-notification was necessary. The vote to delete the words "ask, demand or solicit" was actually partially in response to the Chairman's concern that the language would imply that an official could ask for a gift if it was under $150. A result, he suggested, that was clearly not the intention of the Commission. See Exhibit 29, RIEC Transcript, May 23, 2000, pp. 93-4. Re-notification should also not be required because the word "shall" was inadvertently left out of the copy of the Regulation that was filed with the Secretary of State. If re-notification were required every time a typographical error appeared in a document or proposed legislation, regulations and legislation would get enacted in Rhode Island at a snail's pace.
As stated previously, procedural rules such as the ones found in the APA are not meant to be a straitjacket for agencies. Instead, they are meant to ensure "meaningful public participation" in the proceedings, and create a fair opportunity for the public to present their views. See Basf Wyandotte Corp. 598 F.2d at 642. The general purpose and goal of procedural rules that require notice during rulemaking is to "provide fairness to interested parties." See Phillip M. Kannan, The Logical Outgrowth Doctrine in Rulemaking, 48 Adm. L. Rev. 213, 219 (1996). The record reveals that the public had ample opportunity to discuss their views on proposed amendments to the current "zero tolerance" regulation. Since February 15, 2000, the public has had an opportunity to comment upon the entire proposed amendment. Even if this Court were to characterize the changes made in the amendment as "substantial," the changes were certainly "" in character with the original scheme' and a "logical outgrowth' of the notice and comment already given." Id. Although three alternatives were offered to guide the public as to possible changes to the current rule, the entire notice that was advertised established a broad category in which the public had a fair opportunity to comment. Therefore, without reaching the merits of the actual Regulation, this Court finds that the Commission satisfied the procedural requirements set forth in R.I. Gen. Law 42-35-3 (a)(1), in that the requisite notice that was given by the Commission prior to the hearings and enactment of the amendment was proper.
 B. R.I. Gen. Laws 42-35-3 (a)(3) and (4) Need/Alternatives
The Plaintiffs next allege that the Commission violated certain provisions found within R.I. Gen. Laws §§ 42-35-3 (a)(3) and (4). First, the Plaintiffs contend that the Commission failed "to demonstrate the need for the adoption, amendment, or repeal of any rule in the record of the rulemaking proceeding," and failed to "demonstrate that there is no alternative approach among the alternatives considered during the rulemaking proceeding which would be as effective and less burdensome. . . ." R.I.G.L. § 42-35-(a)(3).[5] The plaintiffs point to numerous objections made by the public to the amendment and also argue that the Commission never spent time reviewing the reasons for the "zero tolerance" rule's enactment in 1998.
A review of the record, however, also reveals testimony from the public stating that the "zero tolerance" rule was ineffective and statements from the Commission that the "zero tolerance" rule was too restrictive. For instance, at the May 23, 2000 hearing, Michael Kelly testified that "the policy that you currently have [the "zero tolerance" rule] is too restrictive, is unnecessary, and I believe that in certain circumstances it can stifle legitimate discussion between the average citizen, the small businessman, and legislators and government employees." See Exhibit 29, RIEC Transcript, May 23, 2000, pp. 48. To illustrate his argument, he pointed to a specific experience he had in Rhode Island and stated that as a result of the "zero tolerance" policy, he was unable to have a reception this year where small businessmen could come and discuss their view with legislators. Id. at 49-50.
Other testimony was given at the February 15, 2000 hearing from Professor Cornwall, currently a Brown University professor, who stated that the "zero tolerance" rule was "unenforceable on its face," and that it "invites" or "compels differential enforcement." See Exhibit 23, RIEC Transcript, February 15, 2000, pp. 4-6. Also at the February hearing, Mr. Larisa, on behalf of the Administration of Governor Almond, stated that the Administration "didn't think that [the "zero tolerance" rule] was necessary, appropriate or prudent [two years ago] and we don't think it is today." Id. at 40. He also stated that "[w]hat we're dealing with here, we believe, is a ban that really hasn't worked." Id. at 41. With respect to alternatives, he stated that "even if this Commission adopted some rendition of alternative three and even if it took the highest values, that would still place Rhode Island among the strictest with respect to rules and regulations governing gifts by interested parties." Id. at 42.
In response to the public comment and testimony, Robin L. Main, a member of the Commission, while speaking at the May 23, 2000 hearing, noted that she thinks it is "important that state government employees are able to attend seminars and share in a sandwich or some pasta or whatever is offered at those seminars to get information. I think it's important for state officials, whether they be elected or just government employees, be able to view certain civic or charitable events because of funding issues or just support for the community." See Exhibit 29, RIEC Transcript, May 23, 2000, p. 61. Another member of the Commission, Francis J. Flanagan, expressed his concern or disdain for the "zero tolerance" rule and stated that "the numbers should reflect the realistic cost of events to also avoid frivolous suits." Id. at 65. He also stated that "a gentleman who spoke at the last hearing talked about nickel and diming. I'd hate to see someone coming in here with receipts, the $100 versus 90 versus 150. I believe these events cost $150. I think $450 is realistic." Id.
What weight should this Court give to certain statements from the public? That is a question that is better left for the Commission while performing its legislative function of promulgating rules within the purview of the Code of Ethics. See In re Advisory Opinion to the Governor (Ethics Commission), 612 A.2d at 20. The Commission can make, after listening and considering comments from the public, decisions regarding the efficacy of rules slated for enactment. That is the essence of the legislative function. So long as the Commission demonstrates in the record that a rule was needed and that other less burdensome alternatives were meaningfully considered, it satisfies certain procedural requirements found in R.I.G.L. § 42-35-3 (a)(3). It is this Court's opinion that the record shows that the Commission demonstrated the need for the new rule and accepted and considered alternate views on the subject. Based upon those considerations, a majority of the Commission believed an amendment was necessary. It is not for this Court to substitute its judgment for that of the Commission as to the substance or merits of the amendment. See e.g., In re Advisory Opinion to the Governor, 732 A.2d 55 (R.I. 1999).
Furthermore, there are no provisions in the statute that require an agency to make specific findings of fact or issue a concise statement as to whether a need was demonstrated, or whether there are less burdensome alternatives, unless it is specifically requested from an interested person. See R.I.G.L. § 42-35-3 (a)(2) and (3). This Court is unaware of any such request. The statute merely states that in order for an adoption, amendment, or repeal of any rule to be properly enacted, the agency shall demonstrate certain requirements within the record. This Court finds that the record reveals evidence that those procedural requirements were met with regard to the demonstration of need and other alternative requirements.
 Overlap/Duplication
The plaintiffs also contend that the Commission failed to identify and justify overlap or duplication of the amendment with any other state regulation in violation of R.I. Gen. Law 42-35-3 (a)(3).[6] The other statute in question is Title 17, Chapter 25, Rhode Island Campaign Contributions and Expenditures Reporting. Specifically, the Plaintiffs argue that Regulation 36-14-5009 overlaps sections 17-25-3 and 10.1 without justification.[7] The plaintiffs state that the Commission failed to identify or justify that the definition of "gift or other thing of value" in Regulation 5009 overlaps with the definition of "contribution" as defined by R.I.G.L. § 17-25-3 (3).
The requirement to identify and justify any overlap or duplication with any other state regulation is within the requirement that the Commission demonstrate a need for the regulation and show that there are no less burdensome alternatives. The Defendant argues that "[q]uite simply, the Commission could not identify an overlap or duplication because none exist." The record displays that the Commission was indeed mindful of their responsibilities under the APA as they were voting for the enactment of the amendment. See Exhibit 29, RIEC Transcript, May 23, 2000, pp. 111-15. Furthermore, this Court is not convinced that there even is an actual overlap between the rules that would require the Commission to determine the issue again. Regulation 5009 specifically excludes campaign contributions from the regulation. Also, "contributions" as defined under the Campaign Financing laws must specifically be used towards the promotion of the recipient's campaign. The policy declaration in that Chapter states that "[i]t is hereby declared to be in the public interest and to be the policy of the state to require the reporting of certain contributions received and expenditures made to aid or promote the nomination, election, or defeat of all candidates for public office." R.I.G.L. § 17-25-2. Also, any personal use of gifts or contributions is prohibited under Rhode Island's campaign financing laws. See R.I.G.L. § 17-25-7.2.[8] Therefore, if a recipient of a gift does not use the "contribution" to further his or her campaign, but instead uses it for personal or other reasons unrelated to the campaign, the gift or "contribution" falls within the gift regulation.
As noted earlier, there are no APA procedural rules that require findings of fact regarding overlap or duplication in the event none exists. Supra, p.17. It would be impractical to require an agency to pinpoint on the record every statute of the General Laws and prove that they contain no overlap or duplication. So long as the agency identifies other regulations that actually do contain overlap with the new regulation, and justify that overlap, it satisfies its procedural obligations under the APA. The record shows that the Commission was mindful of its obligation under the APA yet still found there to be no overlap or duplication with other regulations. See Exhibit 29, RIEC Transcript, May 23, 2000. It is also apparent after reviewing the statutes, that the Commission committed no error of law by not discussing or identifying any overlap or duplication with regard to the chapter involving campaign finance.
 Small Business
The Plaintiffs again allege that the Commission failed to satisfy its procedural requirements under the APA by not determining whether the Regulation 5009 would have a significant adverse economic impact on small businesses and failing to request comments on proposals as to how to remedy the situation.[9] The Defendants disagree.[10] The record reveals that the Commission heard testimony from both proponents and opponents to the gift regulation regarding its effect on small businesses. See Exhibit 29, RIEC Transcript, May 23, 2000, pp. 48-50; Exhibit 23, letter from Charles Hall to RIEC, February 24, 2000; Exhibit 28, RIEC Transcript, May 1, 2000, pp. 77-78. Also, the record again shows that the Commission was cognizant of its responsibilities under the APA concerning that issue. In fact, a specific motion was voted on as to whether the Commission determined that issue. See Exhibit 29, RIEC Transcript, May 23, 2000, pp. 111-15. of course, as the Supreme Court stated in In re Advisory Opinion to the Governor, the Commission actions are indeed subject to the "judiciary's power to review the commission rulemaking functions as set forth in § 42-35-7." See In re Advisory Opinion to the Governor 612 A.2d at 18. Merely because the Commission voted that it satisfied the APA requirements does not necessarily lead to the conclusion that it did actually satisfy the procedural requirements. Nonetheless, it had received testimony on the issue from both sides of the argument, and the vote displays that the Commission was mindful of its obligations. The Commissioners' conclusions were based upon the public comments and their own knowledge of the regulation, and as mentioned previously, it is not for this Court to substitute its opinion for that of the Commission as to the appropriateness of a regulation. The Court's role in matters such as this is only to determine the validity and applicability of the regulation by ascertaining whether the agency satisfied the procedural requirements of the APA. This Court finds, without reaching the merits of the regulation, that the Commission satisfied the procedural requirements in concluding that the regulation would not have a significant adverse impact on small business.
 C. Violation of R.I. Gen. Laws §§ 36-14-1, et. seq.
Lastly, the Plaintiffs argue that this Court should enjoin the effective date of the amendment to Regulation 5009 until complaints currently pending against Thomas Goldberg, Robin Main, and Melvin Zurier, members of the Commission involved in the promulgation of Regulation 5009, are resolved.[11] As the Plaintiffs themselves indicated in their argument to the Court, this Court is not in a position at this time to review the complaints that have been filed against the three defendants. That is not the issue, nor is that what the Plaintiffs are asking this Court to do. Hence, this Court does not intend to reach the issues involved in those complaints. However, it is also not the intention of this Court to grant injunctive relief or a declaratory judgment based upon the fact that complaints have been filed against certain agency members who participated in the promulgation of a rule or regulation.
The members of the Commission are empowered "with the authority to develop a code of ethics, to investigate violations, and to enforce its provisions." See In re Advisory Opinion to the Governor, 612 A.2d at 10-11. In performing their duties, the members of the Commission are subject to the very rules they promulgate and enforce. Hence, they act at their own peril, and penalties and fines could be brought against them as well as anyone subject to the Code of Ethics. It is simply premature at this time for this Court to declare that any result that arises from the complaints would have an effect on the promulgation of Regulation 5009. If the Court did take such action, and granted injunctive or declaratory relief every time a complaint was filed against a person who is involved in enacting regulations, then the rulemaking process could be slowed to the point of inefficiency simply by one's filing a complaint against the rule-maker.
If, however, the result of the proceedings against these three members of the Commission indicates that the process of enacting Regulation 5009 was somehow flawed, or that some conflict of interest was involved, then a new complaint against the Commission could then be filed seeking a declaratory judgment on its validity or applicability in accordance with R.I. Gen. Laws § 42-35-7. Now is not the time for that determination. Therefore, the Plaintiffs' request that this Court grant injunctive or declaratory relief with regard to Count Five in the Amended Complaint is premature.
 Conclusion
This Court finds that the Rhode Island Ethics Commission did not violate the procedural requirements as set forth in the Administrative Procedures Act of Rhode Island. It makes no findings or conclusions as to the actual merits or appropriateness of the Regulation. As stated earlier, Rhode Island has "vested in the commission a limited share of legislative power to make law in the area of ethics." In re Advisory Opinion to the Governor, 612 A.2d at 20; see also, In re Advisory Opinion to the Governor 732 A.2d 55 (R.I. 1999). The Commission, in making such laws, is not only subject to the scrutiny from the judiciary's power to review the Commission's actions, but it is subject to the public's scrutiny as well. This Court is not a Court of public opinion however, and any change in the laws of this state should be sought within the legislative process, or through a constitutional convention. Therefore, for the reasons stated above, the Defendants' Motion to Dismiss the Amended Complaint is granted.
Counsel shall submit the appropriate judgment for entry.
[1] The relevant sections of R.I.G.L. § 42-35-3 as argued or cited by the Plaintiffs are:
 42-35-3. Procedure for adoption of rules. — (a) Prior to the adoption, amendment, or repeal of any rule the agency shall:
 (1) Give at least thirty (30) days' notice of its intended action. The notice shall include a statement of either the terms or substance of the intended action or a description of the subjects and issues involved, and of the time when, the place where, and the manner in which interested persons may present their views thereon. The notice shall be mailed to all persons who have made timely request of the agency for advance notice of its rule-making proceedings, and published in a newspaper or newspapers having aggregate general circulation throughout the state, provided, however, that if the action is limited in its applicability to a particular area, then the publication may be in a newspaper having general circulation in the area. Copies of proposed rules shall be available at the agency and by mail to any member of the public upon request.
 (3) Demonstrate the need for the adoption, amendment, or repeal of any rule in the record of the rulemaking proceeding. The agency shall demonstrate that there is no alternative approach among the alternatives considered during the rulemaking proceeding which would be as effective and less burdensome to affected private persons as another regulation. This standard requires that an agency proposing to adopt any new regulation must identify any other state regulation which is overlapped or duplicated by the proposed regulation and justify overlap or duplication.
 (4) Determine whether such action would have a significant adverse economic impact on small business or any city or town. If a significant adverse economic impact on small business or any city or town may result from the proposed action, the notice of proposed action shall identify the types of small businesses that would be affected and the kind of adverse economic impact on small business that may result, or the adverse fiscal impact on cities and towns which may result and shall request comments on proposals as to how the proposed action can be changed so that the adverse economic impact on small business or cities and towns can be minimized or eliminated.
 * * *
 (c) No rule hereafter adopted is valid unless adopted in substantial compliance with this section, but no contest of any rule on the ground of noncompliance with the procedural requirements of this section may be commenced after two (2) years from its effective date.
[2] R.I.G.L. § 36-14-4 states: The following persons shall be subject to the provisions of the Rhode Island Code of Ethics in government:
 (1) State and municipal elected officials;
 (2) State and municipal appointed officials; and
 (3) Employees of state and local government, of boards, Commissions and agencies.
[3] Section 42-35-7 states in full:
 42-35-7. Declaratory judgment on validity or applicability of rules. — The validity or applicability of any rule may be determined in an action for declaratory judgment in the superior court of Providence County, when it is alleged that the rule, or its, threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The agency shall be made a party to the action. A declaratory judgment may be rendered whether or not the plaintiff requested the agency to pass upon the validity or applicability of the rule in question.
[4] This is essentially the issue involved in Count I of the Plaintiffs' Amended Complaint.
[5] These arguments are contained within Count II of the Plaintiffs' Amended Complaint.
[6] This argument is encompassed in Count III.
[7] The relevant portions of R.I.G.L. §§ 17-25-3 and 10.1 are as follows:
 17-25-3. Definitions. — As used in this chapter unless a different meaning clearly appears from the context:
 * * *
 (3) "Contributions" and "expenditures" include all transfers of money, paid personal services, or other thing of value to or by any candidate, committee of a political party, or political action committee. A loan shall be considered a contribution of money until it is repaid.
 17-25-10.1. Political Contributions — Limitations. — (a)(1) No person, other than the candidate to his or her own campaign, nor any political action committee shall make a contribution or contributions to any candidate as defined by § 17-25-3 or political action committee or political party committee which in the aggregate exceed one thousand dollars ($1,000) within a calendar year, nor shall any person make contributions to more than one candidate, to more than one political action committee, or to more than one political party committee or to a combination of candidates and political action committees and political party committees which in the aggregate exceed ten thousand dollars ($10,000) within a calendar year, nor shall any political action committee make such contributions which in the aggregate exceed twenty-five thousand dollars ($25,000) within a calendar year, nor shall any candidate or any political action committee or any political party committee accept a contribution or contributions which in the aggregate exceed one thousand dollars ($1,000) within a calendar year from any one person or political action committee.
[8] Section 17-25-7.2 states:
17-25-7.2. Personal use of campaign funds prohibited.
 (a) The personal use by any elected public office holder or by any candidate for public office as defined in § 17-25-3 of campaign funds contributed after April 29, 1992 shall be prohibited. For the purposes of this section "personal use" is defined as any use other than expenditures related to gaining or holding public office and for which the candidate for public office or elected public official would be required to treat the amount of the expenditure as gross income under § 61 of the Internal Revenue Code of 1986, 26 U.S.C. § 61, or any subsequent corresponding Internal Revenue Code of the United States, as from time to time amended.
 (b) Any campaign funds not used to pay for the expenses of gaining or holding public office may: (1) be maintained in a campaign account(s), (2) be donated to a candidate for public office, to a political organization, or to a political action committee, subject to the limitation on contributions in § 17-25-10.1, (3) be transferred in whole or in part into a newly established political action committee, (4) be donated to a tax exempt charitable organization as that term is used in § 501(c)(3)of the Internal Revenue Code of 1986, 26 U.S.C. § 501, or any subsequent corresponding internal revenue code of the United States as from time to time amended, (5) be donated to the state of Rhode Island, or (6) be returned to the donor.
[9] Count IV in the Amended Complaint.
[10] The Defendants initially argue that the Plaintiffs do not have any standing to make this argument, but Plaintiff Arruda displayed in his affidavit, as discussed in the Motion to Dismiss Robert Arruda for lack of standing, that he is an owner of a small business.
[11] Count V of the Amended Complaint.