## IN RE REVIEW OF PROPOSED TOWN OF NEW SHOREHAM PROJECT.

### Nos. 2010–272–M.P., 2010–273–M.P.

Supreme Court of Rhode Island.

April 21, 2011.

### ORDER

This matter came before the Supreme Court on consolidated petitions for certiorari filed pursuant to G.L.1956 § 39–5–1. The petitioners, Conservation Law Foundation (CLF), Toray Plastics (America), Inc. (Toray), and Polytop Corporation (Polytop), seek review of certain aspects of a decision of the Public Utilities Commission (the commission or PUC) approving an agreement between Narragansett Electric Company d/b/a National Grid (National Grid) and Deepwater Wind Block Island, LLC (Deepwater Wind). These consolidated petitions came before the Court for oral argument in response to our order directing the petitioners to appear and show cause why the writs of certiorari heretofore issued should not be quashed and the petitions dismissed for lack of standing within the meaning of § 39–5–1.

The pertinent facts underlying this controversy are not in dispute and may be briefly summarized as follows. On June 30, 2010, National Grid and Deepwater Wind filed an amended power purchase agreement (amended PPA) with the commission for its review pursuant to recently amended G.L.1956 § 39–26.1–7 of the Long–Term Contracting Standard for Renewable Energy Statute, chapter 26.1 of title 39.[1] The amended PPA provided for the construction of an offshore wind project by developer, Deepwater Wind, and for the sale of power produced by that project to Rhode Island's predominant power distribution company, National Grid. In docket No. 4185, the commission reviewed the amended PPA, and, on August 16, 2010, the commission issued an order approving the amended PPA based on a finding that the project met the standards set forth in § 39–26.1–7.

In August 2010, petitioners CLF,[2] Toray, and Polytop,[3] as well as the then

---

1. On June 15, 2010, G.L.1956 § 39–26.1–7 was amended to alter the administrative review process applicable to the commission's review of the contract at issue in the case at bar. *See* P.L.2010, ch. 32, § 1.

2. The CLF's petition sought review of four issues: (1) whether the 2010 amendments to § 39–26.1–7, which gave rise to the commission's proceeding in docket No. 4185, violated the constitutional doctrine of separation of powers; (2) whether the 2010 amendments to § 39–26.1–7 violated the provision in section 2 of article 1 of the Rhode Island Constitution requiring that all laws be made "for the good of the whole"; (3) whether the commission's proceeding in docket No. 4185 was barred by the doctrine of *res judicata* ; and (4) whether the commission's proceeding in docket No. 4185 was barred by the doctrine of administrative finality.

Attorney General,[4] each filed a petition for a writ of certiorari pursuant to § 39-5-1, seeking review of the commission's order. This Court issued each of the requested writs and ordered the three certiorari petitions consolidated for further proceedings before this Court.

On February 4, 2011, after this case had been fully briefed on the merits by all parties, the current Attorney General, who had taken office on January 4, 2011, moved to withdraw the certiorari petition filed in this case by his predecessor in office. This Court granted the motion, quashing the writ previously issued pursuant to the former Attorney General's certiorari petition. The Attorney General's departure caused this Court to focus its attention on the issue of the standing of the remaining petitioners, CLF, Toray, and Polytop, to continue their challenge of the commission's decision. Accordingly, we placed the remaining certiorari petitions on the show-cause calendar and instructed them to file memoranda demonstrating their standing within the meaning of § 39-5-1.

Section 39-5-1 confers standing only on persons "aggrieved by a decision or order of the commission." *See Blackstone Valley Chamber of Commerce v. Public Utilities Commission,* 452 A.2d 931, 932 (R.I. 1982) (*Blackstone*). It is well settled in this jurisdiction that "a person is so aggrieved by a judgment or order when such judgment or order results in injury in fact, economic or otherwise." *Newport Electric Corp. v. Public Utilities Commission,* 454 A.2d 1224, 1225 (R.I.1983); *see also Rhode Island Ophthalmological Society v. Cannon,* 113 R.I. 16, 26, 317 A.2d 124, 129 (1974). In the case of an organization such as CLF, the United States Supreme Court has held that this standing requirement is satisfied "when [the organization's] members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested require the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). Further, this Court has added that "[m]ere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved' * * *." *Blackstone,* 452 A.2d at 933 (quoting *Sierra Club v. Morton,* 405 U.S. 727, 739, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)). We also have explained that "the party seeking relief [must have] alleged such a personal stake in the outcome of the controversy as to ensure concrete adverseness that sharpens the presentation of the issues upon which the court depends for an illumination of the questions presented." Id.

In addition, this Court has, "on rare occasions, overlooked the question of standing and proceeded to determine the merits of a case because of substantial public interest in having a matter resolved * * *." *Blackstone,* 452 A.2d at 933; *see also Sennott v. Hawksley,* 103 R.I. 730, 732, 241 A.2d 286, 287 (1968).

Toray and Polytop[5] argue that they are injured in fact by the commission's deci-

---

**3.** Toray and Polytop jointly filed a petition for writ of certiorari in which they sought review of the commission's determination that the amended PPA met the statutory preconditions for approval set forth in § 39-26.1-7.

**4.** The Attorney General's petition—now quashed as discussed *infra*—sought review on similar grounds with respect to certain issues proffered by CLF and Toray.

**5.** Toray and Polytop are large employers and "are among the largest users of electricity in Rhode Island."

sion because approval of the amended PPA will result in "millions of dollars in above-market electric distribution costs," "with resulting negative impacts on their businesses," and that they therefore are "aggrieved" within the meaning of § 39-5-1. The respondents,[6] on the other hand, maintain that Toray and Polytop lack standing to prosecute their certiorari petition because (1) they will suffer no personalized harm that is distinct from that of the community in general, and (2) this is not a "rate case" that will result in direct harm to them, but rather it is a general proceeding to determine whether this alternative energy project is in the public interest.

Next, CLF [7] contends that it has organizational standing because its members will be directly and adversely affected by climate change and will suffer an injury in fact if Rhode Island "delays the efforts to respond to climate change by enacting piecemeal legislation that does not create the foundation necessary to build a strong renewable energy sector." To the contrary, respondents dispute CLF's standing primarily on the grounds that (1) CLF's members will not be harmed by the commission's decision and therefore it is not an "aggrieved" party within the meaning of § 39-5-1; (2) CLF seeks to litigate abstract questions of law that are unrelated to its organizational purpose; and (3) CLF cannot establish the requisite nexus between its asserted injury and the activity at issue.

Finally, if this Court were to conclude that any or all of the petitioners cannot meet the requirements of standing to prosecute their certiorari petitions, they ask us to overlook the issue of standing and proceed to address the merits because this case involves issues of substantial and compelling public interest. In support of this request, CLF highlights the major questions presented by this case about the regulatory backdrop for the development of renewable energy policies and projects in Rhode Island, while Toray and Polytop point to the potential for the commission's decision to result in increased costs to Rhode Island ratepayers, as compelling public interests. The respondents counter that neither CLF, Toray, nor Polytop is an adequate representative of the public's interest because none is "aggrieved" by the commission's decision and that, therefore, this is not the "rare" case in which this Court should invoke the substantial public interest exception to the standing requirement.

After reviewing the record and considering the parties' written and oral submissions, this Court is of the opinion that both Toray and Polytop are aggrieved parties within the meaning of § 39-5-1. With respect to CLF, however, this Court is of the opinion that it does not meet the traditional requirements of standing as an aggrieved party. This Court acknowledges CLF's significant interest in issues of climate change and recognizes the strong public interest in this offshore wind pro-

---

**6.** The respondents, Deepwater Wind, National Grid, and the Division of Public Utilities and Carriers, joined by intervenors the Governor, the President of the Rhode Island Senate, and the Speaker of the Rhode Island House of Representatives, jointly filed full briefs in this matter in support of the commission's decision. On the issue of standing, with the exception of the Division of Public Utilities and Carriers, which chose not to file a memoran-

dum, the aforementioned respondents and intervenors jointly filed a memorandum contesting the standing of petitioners.

**7.** The CLF is a nonprofit environmental advocacy organization, with members throughout New England, that has a robust history of working on issues related to facilitating renewable energy to combat climate change.

ject. A majority of this Court is of the opinion, however, that CLF's petition does not present such a "rare occasion" as to cause us to overlook well-established principles of standing in order to determine its merits. The constitutional issues raised by CLF were clearly not cognizable by the PUC. Although we leave for another day the question of whether constitutional issues may be raised by a party with standing in the context of a PUC appeal, or whether such issues must first be raised in an action for declaratory judgment, it is clear to us that CLF's interest in this matter is to ameliorate the adverse effect of climate change by creating "the foundation necessary to build a strong renewable energy sector in Rhode Island." Such concerns implicate questions of policy more appropriately addressed in the political arena. We decline, therefore, to disregard our well-settled standing doctrines with respect to CLF's petition for writ of certiorari.

We hold, therefore, that Toray and Polytop may continue to prosecute their certiorari petition, which heretofore has been assigned to the regular calendar for argument on the merits. The writ issued with respect to CLF's petition for a writ of certiorari is hereby quashed.

**Justice Flaherty, with whom Justice Robinson joins, dissenting.**

We dissent from this order in part, namely with respect to CLF, because we are of the firm opinion that this is one of those "rare occasions" when it would be appropriate to "overlook[ ] the standing requirement to determine the merits of a case involving substantial public interest." *Retirement Board of the Employees' Retirement System of Providence v. City Council of Providence*, 660 A.2d 721, 726 (R.I.1995) (internal quotation marks omitted); *see also Burns v. Sundlun*, 617 A.2d

114, 116 (R.I.1992); *Kass v. Retirement Board of the Employees' Retirement System of Rhode Island*, 567 A.2d 358, 359 n. 1 (R.I.1989); *Sennott v. Hawksley*, 103 R.I. 730, 732, 241 A.2d 286, 287 (1968). Indeed, the majority of this Court, as set forth in this order, *supra*, "recognizes the strong public interest in this offshore wind project."